460 U.S. 557 (1983)
ILLINOIS
v.
ABBOTT & ASSOCIATES, INC., ET AL.
No. 81-1114.
Supreme Court of United States.
Argued November 29, 1982
Decided March 29, 1983
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT
*558 Thomas M. Genovese, Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were Tyrone C. Fahner, Attorney General, and Thomas J. DeMay and Thomas S. Malciauskas, Assistant Attorneys General. Richard G. Wilkins argued the cause pro hac vice for the United States, respondent under this Court's Rule 19.6, in support of petitioner. With him on the briefs were Solicitor General Lee, Assistant Attorney General Baxter, Deputy Solicitor General Wallace, and Robert B. Nicholson.
Michael B. Nash argued the cause for respondents and filed a brief for respondents Climatemp, Inc., et al. Jerold S. Solovy, Barry Sullivan, and Thomas E. Lindley filed a brief for respondents Abbott & Associates, Inc., et al. Mark Crane and Wm. Carlisle Herbert filed a brief for respondents Inland Heating & Air Conditioning Co. et al. Arthur C. Chapman filed a brief for undisclosed respondents.[*]
Arthur M. Handler filed a brief for Cuisinarts, Inc., as amicus curiae urging affirmance.
Dee J. Kelly, Reese Harrison, Robert Travis, Frank McCown, Stanley E. Neely, Wilson W. Herndon, Timothy R. McCormick, and Michael P. Carnes filed a brief for certain appellants in In re Grand Jury Proceedings as amici curiae.
*559 JUSTICE STEVENS delivered the opinion of the Court.
The Attorney General of Illinois asserts a statutory right of access to transcripts, documents, and other materials gathered *560 or generated by two federal grand juries during their investigations of alleged violations of the federal antitrust laws. He contends that § 4F(b) of the Clayton Act, 90 Stat. 1395, 15 U. S. C. § 15f(b), enacted as part of Title III of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (Act), makes it unnecessary for him to meet the "particularized need" standard generally required under Rule 6(e) of the Federal Rules of Criminal Procedure in order to obtain access to grand jury materials. Disagreeing with two other *561 Courts of Appeals,[1] the Seventh Circuit rejected this contention. We granted certiorari to resolve the conflict, 455 U. S. 1015 (1982), and now affirm.

I
On January 31, 1980, the State of Illinois filed a petition in the United States District Court for the Northern District of Illinois seeking disclosure of transcripts and documents generated during two federal grand jury investigations of alleged bid-rigging in the construction trades in Illinois. These investigations had resulted in the return of three separate indictments naming 59 defendants.[2] At the time the State filed its petition, most of the defendants had entered pleas of nolo contendere to the federal charges and one had been found guilty by a jury, but eight defendants were still awaiting trial.[3] The Justice Department had refused the State's request for the grand jury materials,[4] explaining that they *562 could not be disclosed without a court order under Rule 6(e) of the Federal Rules of Criminal Procedure.[5]
The State advised the District Court that it had already initiated civil class actions against 86 defendants, charged in the indictments or identified as unindicted co-conspirators, to recover damages based on federal antitrust violations. The State's petition invoked § 4F(b)[6] and Rule 6(e) in support of *563 disclosure. It further stated that "the materials requested are extremely relevant and material to Plaintiff's causes; their disclosure will insure and promote efficient and economical utilization of scarce judicial and taxpayers resources, and will also obviate the need for duplicative and redundant discovery . . . ." App. 13. The Department of Justice supported the State's petition.[7] Certain defendants in the civil suits and others who had testified before the grand juries intervened to oppose disclosure.
The District Court first considered the State's claim that it had a statutory right of access under § 4F(b) without making any showing of compelling or particularized need. The court concluded that, in response to a § 4F(b) request, the Justice Department was free to disclose documents that were independently acquired by the Executive Branch and voluntarily presented to the grand jury. But it held that transcripts of grand jury testimony and other materials acquired by the grand jury through the use of its subpoena power were not part of the "investigative files" of the Attorney General of the United States within the meaning of the Act. Moreover, the court found nothing in the legislative history of the Act to suggest that Congress intended either to authorize "unmonitored *564 disclosure of purely grand jury materials" without a court order under Rule 6(e), or to modify the standard traditionally applied under Rule 6(e) itself.
The District Court then explained why the record as then developed would not justify disclosure under Rule 6(e) without reference to § 4F(b). Noting the absence of any special showing of need for access to the grand jury materials, the scope of the material otherwise available to the plaintiffs, and the interests in grand jury secrecy that survived the termination of criminal proceedings,[8] the District Court denied all of the petitions for disclosure. The denial, however, was without prejudice to renewed requests under Rule 6(e) after discovery efforts created a basis for more narrowly focused requests showing "particularized needs."[9]
*565 The State of Illinois filed a timely appeal to the United States Court of Appeals for the Seventh Circuit. On appeal the State did not contend that its petition had satisfied the showing of particularized need normally required under Rule 6(e). Instead, it presented the issue that had been finally resolved by the District Court's order: whether § 4F(b) gives the state attorney general a special right of access to grand jury materials that is independent of or that modifies the limitations that were imposed by Rule 6(e) in 1976 when the Act became law. Noting that the plain language of the Act authorizes disclosure only "to the extent permitted by law," and that the legislative history affirmatively indicates Congress' intent to preserve then-existing limitations on access to grand jury materials, the Court of Appeals affirmed. In re Illinois Petition to Inspect and Copy Grand Jury Materials, 659 F. 2d 800 (1981).

II
Section 4F(a) of the Clayton Act, 15 U. S. C. § 15f(a), provides that, whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any state attorney general would be entitled to bring a federal action based substantially on the same alleged violation, he shall promptly give written notification to that official. Under § 4F(b), 15 U. S. C. § 15f(b), in order to assist a state attorney general in evaluating this *566 notice or in bringing an action, the Attorney General of the United States "shall, upon request by such State attorney general, make available to him, to the extent permitted by law, any investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under this Act."
The plain language of § 4F(b) requires us to evaluate the legal context in which Congress legislated in 1976. The statute expressly mandates disclosure of investigative files and other materials only "to the extent permitted by law." It is therefore appropriate to examine the extent to which, at the time the Act was passed, federal law permitted the Attorney General of the United States to disclose matters occurring before a federal grand jury to a state attorney general.[10]
Since 1946 the disclosure of grand jury minutes has been governed by Rule 6(e) of the Federal Rules of Criminal Procedure. In so many words, the Rule establishes a "General Rule of Secrecy," a knowing violation of which "may be punished as a contempt of court."[11] The Rule provides that *567 grand jury transcripts shall remain in the custody of the attorney for the Government "unless otherwise ordered by the court in a particular case."[12] There is only on exception to the general prohibition against disclosure without prior court approval, but that exception is limited to Federal Government personnel performing a specified federal law enforcement function.[13] Plainly Rule 6(e) does not permit the Attorney General of the United States to disclose any grand jury proceedings to a state attorney general unless he is directed to do so by a court.
The court, however, is authorized by Rule 6(e)(3)(C) to permit certain disclosures that are otherwise prohibited by the "General Rule of Secrecy." The scope of that authority has been delineated in a series of cases setting forth the standard of "particularized need."[14] We need not delineate the precise contours of that standard in this case, because the State made no attempt to make any such showing in the District Court, see n. 8, supra, and has consistently maintained that it need not shoulder that burden.[15]
*568 Thus, under the law as it existed in 1976, two propositions were clear: (1) a state attorney general could not obtain access to federal grand jury proceedings without federal court approval; and (2) the State could not secure such approval merely by alleging that the materials were relevant to an actual or potential civil antitrust action.[16] At the time the Act was passed in 1976, a blanket disclosure request comparable to the one at issue in this case would have been denied because it was not permitted by law. The State does not suggest that there has been any change in the law since 1976 that affects its right to disclosure.[17] It therefore follows from the plain language of the Act that the State Attorney General is not entitled to the disclosure he seeks in this case.

III
If the text of § 4F(b) left any doubt concerning its recognition of the "General Rule of Secrecy" for grand jury materials, *569 that doubt would be removed by its legislative history. First, Congress considered and rejected a proposed section that would have specifically granted civil antitrust plaintiffs a right of access to grand jury materials after completion of federal civil or criminal proceedings. As reported by the Senate Judiciary Committee, the provision eliminated the particularized-need requirement and permitted disclosure, subject to court-imposed conditions, upon payment of reasonable costs.[18] The proposed sweeping invasion of grand jury secrecy drew substantial criticism from a number of Senators.[19] A floor amendment limited the section's scope, and as amended it was adopted by the Senate,[20] but at the informal House-Senate conference the House conferees objected and the Senate's provision was dropped.[21] The net effect of these *570 deliberations was to leave the law applicable to grand jury materials unchanged.
Second, a specific explanation of § 4F(b) by Senator Abourezk, the floor manager of the legislation, confirms the conclusion that Congress did not intend to change existing law concerning grand jury materials. The section was included in the compromise bill accepted by an informal House-Senate conference. After Senator Hruska expressed his concern that § 4F(b) might require the Department of Justice to act as "a massive document distribution center for the benefit of State officials,"[22] Senator Abourezk explained:
"The section specifically limits the Attorney General's power to release documents to whatever his powers are under existing law. Under existing law, he cannot turn over materials given in response to a grand jury demand or to a civil investigative demand. Therefore, the section is limited by existing law to cases where materials were turned over voluntarily." 122 Cong. Rec. 29160 (1976).
Senator Abourezk's interpretation of this provision was not questioned.[23]
*571 Third, the Act's treatment of material obtained by the Government in response to Civil Investigative Demands (CID's) supports our interpretation of § 4F(b). The Act increases the Attorney General's CID powers,[24] but mandates that materials obtained in this manner be kept strictly confidential. CID materials may not be disclosed to persons outside the Federal Government without the consent of the provider. 15 U. S. C. § 1313 (1976 ed. and Supp. V). This requirement was imposed to safeguard the rights of individuals under investigation and to protect witnesses from retaliation.[25] Since those reasons also underlie the traditional secrecy accorded to the grand jury, it would be anomalous for the same Congress that placed stringent limits on CID materials silently to have abrogated grand jury secrecy by permitting wholesale disclosure.[26]

*572 IV
Finally, the State argues that the Act implements a general policy of encouraging federal/state cooperation and giving state attorneys general an important role in the enforcement of the antitrust laws. According to the State, this broad legislative goal would be served by facilitating the State's access to grand jury materials. The State contends that virtually all of the Federal Government's investigations of core Sherman Act violations  such as price fixing and bid rigging  are conducted from the outset by means of grand juries.[27] Therefore, as in this case, a narrow reading of § 4F(b) would severely limit the amount of additional disclosure to state attorneys general. Further, the State asserts, a "particularized need" standard would be difficult to satisfy before a State has filed a civil action and attempted civil discovery  a stage when § 4F(b) is intended to provide assistance to the State.
However correct these assertions may be, they do not authorize us to add specific language that Congress did not include in a carefully considered statute. Congress, of course, has the power to modify the rule of secrecy by changing the showing of need required for particular categories of litigants.[28] But the rule is so important, and so deeply rooted in our traditions, that we will not infer that Congress has exercised *573 such a power without affirmatively expressing its intent to do so. The general goals of enhancing federal-state cooperation in antitrust enforcement, and encouraging more state lawsuits against price fixers, are not sufficient.[29] The statute as enacted by Congress simply does not authorize the Attorney General to turn over the entire investigative record of a federal antitrust grand jury to a state attorney general who has not complied with the judicially developed standards implementing Rule 6(e). Because the disclosure requested by the State in this case is not permitted by Rule 6(e) on the basis of the showing it made to the District Court, the judgment of the Court of Appeals is affirmed.
It is so ordered.
JUSTICE BRENNAN, with whom JUSTICE O'CONNOR joins, concurring.
I join in the Court's opinion. I write separately to state my view that when a district court considers "the public interest, if any, served by disclosure to a governmental body," ante, at 568, n. 15, that consideration may properly include consideration of a specific statutory policy favoring disclosure in particular circumstances. In this case, the district court would have before it the specific provisions of § 4F(b) of the *574 Clayton Act. I agree with the Court that § 4F(b) does not relieve a State of the requirement that it show particularized need under Rule 6(e) and Douglas Oil Co. v. Petrol Stops Northwest, 441 U. S. 211 (1979); but it does not follow that § 4F(b) is irrelevant to the Douglas Oil balancing test. When the district court has before it a statute clearly evincing Congress' intent to foster cooperation with and disclosure to state governments to aid them in enforcement of federal antitrust laws, that is surely material to the public interest served by disclosure to such governments.
NOTES
[*] A brief of amici curiae urging reversal was filed for the State of Alabama et al. by Stephen H. Sachs, Attorney General of Maryland, and Charles O. Monk II and Robert W. Hesselbacher, Jr., Assistant Attorneys General; Charles A. Graddick, Attorney General of Alabama, and Susan Beth Farmer, Assistant Attorney General; Wilson L. Condon, Attorney General of Alaska, and Louise E. Ma, Assistant Attorney General; Robert K. Corbin, Attorney General of Arizona; Steve Clark, Attorney General of Arkansas, and David L. Williams, Deputy Attorney General; George Deukmejian, Attorney General of California, Sanford N. Gruskin, Assistant Attorney General, and Linda L. Tedeschi, Deputy Attorney General; J. D. MacFarlane, Attorney General of Colorado, and Thomas P. McMahon, Assistant Attorney General; Carl R. Ajello, Attorney General of Connecticut, and Robert M. Langer and Steven M. Rutstein, Assistant Attorneys General; Richard S. Gebelein, Attorney General of Delaware, and Vincent M. Amberly, Deputy Attorney General; Judith Rogers, Corporation Counsel of the District of Columbia, Charles Reischel, Deputy Corporation Counsel, and Timothy J. Shearer, Assistant Corporation Counsel; Jim Smith, Attorney General of Florida, and Bill L. Bryant, Jr., Assistant Attorney General; Tany S. Hong, Attorney General of Hawaii, and Sonia Faust, Deputy Attorney General; Linley E. Pearson, Attorney General of Indiana, and Frank A. Baldwin, Assistant Attorney General; Thomas J. Miller, Attorney General of Iowa, and John R. Perkins, Assistant Attorney General; Robert T. Stephan, Attorney General of Kansas, and Wayne E. Hundley, Deputy Attorney General; Steven L. Beshear, Attorney General of Kentucky, and James M. Ringo, Assistant Attorney General; William J. Guste, Jr., Attorney General of Louisiana, and John R. Flowers, Jr., Assistant Attorney General; James E. Tierney, Attorney General of Maine, and Cheryl Harrington, Senior Assistant Attorney General; Francis X. Bellotti, Attorney General of Massachusetts, and Alan L. Kovacs, Assistant Attorney General; Frank J. Kelley, Attorney General of Michigan, and Edwin M. Bladen, Assistant Attorney General; Warren Spannaus, Attorney General of Minnesota, and Stephen P. Kilgriff, Special Assistant Attorney General; Bill Allain, Attorney General of Mississippi, and Robert E. Sanders, Special Assistant Attorney General; John Ashcroft, Attorney General of Missouri, and William Newcomb, Assistant Attorney General; Mike Greely, Attorney General of Montana, and Jerome J. Cate; Paul L. Douglas, Attorney General of Nebraska, and Dale A. Comer, Assistant Attorney General; Richard H. Bryan, Attorney General of Nevada, and Don Christensen, Deputy Attorney General; Gregory H. Smith, Attorney General of New Hampshire, and Edward E. Lawson; James R. Zazzali, Attorney General of New Jersey, Charles D. Sapienza, and Laurel A. Price, Deputy Attorney General; Jeff Bingaman, Attorney General of New Mexico, and James J. Wechsler, Assistant Attorney General; Rufus L. Edmisten, Attorney General of North Carolina, H. A. Cole, Jr., Special Deputy Attorney General, and Fred R. Gamin, Assistant Attorney General; Robert O. Wefald, Attorney General of North Dakota, and Gary Lee, Assistant Attorney General; William J. Brown, Attorney General of Ohio, and Eugene F. McShane; Jan Eric Cartwright, Attorney General of Oklahoma, and Gary Gardenhire, Assistant Attorney General; Dave Frohnmayer, Attorney General of Oregon, and William F. Gary, Solicitor General; Dennis J. Roberts II, Attorney General of Rhode Island, and Patrick J. Quinlan, Assistant Attorney General; Daniel R. McLeod, Attorney General of South Carolina, and John M. Cox, Assistant Attorney General; Mark V. Meierhenry, Attorney General of South Dakota, and Dennis R. Holmes, Assistant Attorney General; William M. Leech, Jr., Attorney General of Tennessee, and William J. Haynes, Jr., Deputy Attorney General; Mark White, Attorney General of Texas, and Katie Bond, Assistant Attorney General; David L. Wilkinson, Attorney General of Utah, and Mark K. Buchi, Assistant Attorney General; John J. Easton, Jr., Attorney General of Vermont, and Glenn A. Jarrett, Assistant Attorney General; Gerald L. Baliles, Attorney General of Virginia, Elizabeth B. Lacy, Deputy Attorney General, and Bertram M. Long and Craig T. Merritt, Assistant Attorneys General; Kenneth O. Eikenberry, Attorney General of Washington, and John R. Ellis, Senior Assistant Attorney General; Chauncey H. Browning, Attorney General of West Virginia, and Charles G. Brown, Deputy Attorney General; Bronson C. La Follette, Attorney General of Wisconsin, and Michael L. Zaleski, Assistant Attorney General; and Steven F. Freudenthal, Attorney General of Wyoming, and Gay Vanderpoel, Assistant Attorney General.
[1] United States v. Colonial Chevrolet Corp., 629 F. 2d 943 (CA4 1980) (placing the burden of justifying nondisclosure on the opposing party), cert. denied, 450 U. S. 913 (1981); and United States v. B. F. Goodrich Co., 619 F. 2d 798 (CA9 1980) (allowing disclosure on a showing of "relevance"). Contra, In re Grand Jury Investigation of Cuisinarts, Inc., 665 F. 2d 24 (CA2 1981) (§ 4F(b) did not change the standard of "particularized need" for state attorneys general), cert. pending, No. 81-1595.
[2] In June 1978, 18 corporations, 13 individuals, and a labor union were charged with conspiring to rig bids on public sheet metal projects in the Chicago area. United States v. Climatemp, Inc., 78 CR 388 (ND Ill.) On January 31, 1979, 21 corporations and 6 individuals were indicted for conspiring to rig bids on piping construction projects in the same area. United States v. Borg, Inc., 79 CR 67 (ND Ill.) (felony); United States v. S. J. Reynolds Co., Inc., 79 CR 66 (ND Ill.) (misdemeanor).
[3] The State's memorandum in support of its petition, filed on January 31, 1980, advised the court that eight defendants were scheduled to begin trial on February 4, 1980. Four of these were subsequently acquitted. On request of the Justice Department, the State held its petition in abeyance pending completion of the trial.
[4] App. 4 (Justice Department notice to the Attorney General of Illinois that indictments had been returned); id., at 5, 7 (state requests for investigative materials relating to the indictments). In response, the Justice Department furnished 19 pages of staff memoranda. It advised the State that, with respect to other materials within the scope of the State's request, the Department would support the State's request for court-ordered disclosure. Id., at 9-10.
[5] Rule 6(e) provides, in part:

"Rule 6. The Grand Jury
.....
"(e) Recording and Disclosure of Proceedings.
"(1) Recording of proceedings. . . . The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.
"(2) General rule of secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . . A knowing violation of Rule 6 may be punished as a contempt of court.
"(3) Exceptions.
.....
"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made 
"(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
"(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
"If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct."
[6] Section 4F of the Clayton Act, as added, 90 Stat. 1395, 15 U. S. C. § 15f, provides:

"(a) Whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action under this Act based substantially on the same alleged violation of the antitrust laws, he shall promptly give written notification thereof to such State attorney general.
"(b) To assist a State attorney general in evaluating the notice or in bringing any action under this Act, the Attorney General of the United States shall, upon request by such State attorney general, make available to him, to the extent permitted by law, any investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under this Act."
[7] Similar petitions were filed on behalf of other parties, including local governmental entities and private persons, who had also filed treble-damages actions against the defendants. The Justice Department took no position with regard to these petitions. The District Court consolidated the various petitions for purposes of argument and decision.
[8] "Petitioners have simply requested the release to them of all of the grand jury material. In their quest for information grand juries often acquire reams of documents and hours of testimony later to be found irrelevant to the investigation or the final charge. Its wholesale disclosure could be embarrassing, if not destructive of third parties or of unindicted individuals and corporations concerned when witnesses are called upon to testify or furnish evidence which involves them. This is one of the principal reasons why grand jurors are sworn to secrecy. It is the duty of the court in following 6(e) to protect from public scrutiny and injury such individuals and corporations. Petitioners after having done little more than filing a suit, seek an all-encompassing, unparticularized general type of full disclosure which by the very nature of the request would defeat the spirit and rule of Procter & Gamble and Douglas Oil [United States v. Procter & Gamble Co., 356 U. S. 677 (1958); Douglas Oil Co. v. Petrol Stops Northwest, 441 U. S. 211 (1979)]. Their request offends the common-law concern for the traditional protection of the innocent that has been built into our grand jury system from its earliest conception." App. to Pet. for Cert. 37a-38a.

These comments carry special weight because they were made by the Chief Judge of a large metropolitan District, who had acquired a unique familiarity with the problems associated with the supervision of the conduct of grand juries.
[9] Because the District Court's order finally disposed of the State Attorney General's claim of a statutory right of access to grand jury materials without a showing of particularized need, we are satisfied that the order was appealable under 28 U. S. C. § 1291. The court's acknowledgment that the State might subsequently seek disclosure of particular materials under a "particularized need" standard does not deprive the order of finality. The ruling at issue in this case was made by the Chief Judge of the Northern District of Illinois in a separately docketed proceeding, see App. to Pet. for Cert. 40a; the opinion contemplates that further disclosure requests would be filed with the District Judges presiding over the State's civil antitrust actions, id., at 39a. See Illinois v. Sarbaugh, 552 F. 2d 768, 773-774 (CA7 1977); cf. Douglas Oil Co. v. Petrol Stops Northwest, supra, at 231-233 (REHNQUIST, J., concurring) (the District Court's order granting access to grand jury minutes "disposes of all of the contentions of the parties and terminates a separate proceeding pending before the grand jury court" and is therefore appealable as a "final decisio[n]" under 28 U. S. C. § 1291).
[10] The parties have briefed and argued, as a separate question, whether grand jury files are included in the "investigative files or other materials" covered by § 4F(b). Respondents suggest that, because the section imposes upon the Attorney General an automatic and mandatory obligation to disclose the materials to which it does apply, it simply does not apply to grand jury materials  which can be disclosed only if authorized by a court. Given our reading of the statute's proviso that disclosure shall be made "to the extent permitted by law," we do not need to address this question separately.
[11] See Rule 6(e)(2), quoted in n. 5, supra. The General Rule of Secrecy codifies a longstanding rule of common law which we have recognized as "an integral part of our criminal justice system." Douglas Oil Co. v. Petrol Stops Northwest, supra, at 218, n. 9. Several distinct interests are served by safeguarding the confidentiality of grand jury proceedings. See 441 U. S., at 219, and n. 10. Even after the conclusion of a particular grand jury's investigation, continued secrecy protects the reputations of the innocent and safeguards witnesses from possible retaliation. In addition, stringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries. Id., at 222. More generally, grand jury secrecy has traditionally been invoked to justify the limited procedural safeguards available to witnesses and persons under investigation.
[12] Rule 6(e)(1).
[13] Rule 6(e)(3)(A)-(B).
[14] See Douglas Oil Co., 441 U. S., at 221-224. "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Id., at 222 (footnote omitted); see also United States v. Procter & Gamble Co., 356 U. S., at 682; Pittsburgh Plate Glass Co. v. United States, 360 U. S. 395, 398-399 (1959); cf. Dennis v. United States, 384 U. S. 855 (1966).
[15] The State's petition sought all materials gathered or generated by the grand jury investigations. In this Court, the State concedes that the district court may properly exercise its discretion to determine whether to disclose the requested materials, but it proposes "a standard less restrictive than particularized need." See Brief for Petitioner 30-33, 42-43. Under this standard the district court would determine whether disclosure would undermine an ongoing or potential federal enforcement proceeding and whether countervailing interests require secrecy, and it could impose appropriate protective limitations upon disclosure. Ibid. The United States, as respondent under this Court's Rule 19.6, in support of petitioner proposes a similar test. See Brief for United States 24-28. However such a standard might be formulated, it differs from the "particularized need" standard, which is expressly preserved by § 4F(b). But in rejecting such a rule, we stress that under the particularized-need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body  along with the requisite particularized need  in determining whether "the need for disclosure is greater than the need for continued secrecy." Douglas Oil Co., supra, at 222.
[16] The State does not directly argue that, apart from § 4F(b), the law permits it to obtain grand jury materials without a showing of particularized need. At oral argument the Assistant Attorney General expressed uncertainty regarding the legal standard that would apply in the absence of § 4F(b). Tr. of Oral Arg. 10. Cf. Brief for United States 15, n. 10 (expressing no opinion on the standard applicable to State requests for grand jury materials in the absence of § 4F(b)).
[17] Although we examine the law in 1976 as an aid to interpreting the intent of the Congress that enacted § 4F(b), the terms of the Act would, of course, be satisfied if a requested disclosure is "permitted by law" at the time the request is made.
[18] See S. Rep. No. 94-803, pp. 4, 33-35, 128, 152 (1976) (§ 202(l) of S. 1284). The Senate Judiciary Committee bill also authorized the Attorney General to give the Federal Trade Commission access to these grand jury materials. Id., at 31-32 (§ 202(k)).
[19] See, e. g., id., at 203-204 (minority views of five members of Judiciary Committee); 122 Cong. Rec. 15318 (1976) (Sen. Thurmond); id., at 15835 (Sen. Allen); id., at 17428-17431 (Sen. Tower). The proposal was also opposed by the administration. Id., at 17038.

One of the leading opponents of § 212(l), Senator Allen, introduced a substitute amendment, defeated by the Senate, which was virtually identical in wording to the section in the House bill that was later enacted into law as § 4F(b). See id., at 15852-15853, 16824-16825, 17194. Senator Allen's support of this provision, coupled with his strong opposition to § 212(l), indicates that § 4F(b) was not intended to abrogate traditional protections of grand jury secrecy.
[20] The amendment limited disclosure to cases in which a defendant had entered a plea of guilty or nolo contendere, and permitted only the disclosure of material provided by that defendant, not by third parties. Id., at 15917-15918, 16922-16923. Amended § 202(l) was part of the bill adopted by the Senate on June 10, 1976. Id., at 17572.
[21] Id., at 29147. After the conference, Senator Abourezk, the Senate floor manager of the bill, prepared a chart comparing the Senate and House versions. The chart showed that S. 1284 gave private plaintiffs and the FTC access to grand jury materials, and that the House version had no comparable provisions. In another section it stated that the House bill provided that state attorneys general may obtain investigative files or other materials from the United States Attorney General "to the extent permitted by law," and noted that the Senate bill had no such provision. See id., at 29151-29152. The chart's structure and wording strongly suggest that § 4F(b) did not contemplate disclosure of grand jury materials to state attorneys general.
[22] Id., at 29144.
[23] This statement in floor debate is consistent with language in a House Committee Report on an earlier version of the statute, which explains that the Justice Department's investigative files "are to be made available except where specifically prohibited." H. R. Rep. No. 94-499, p. 17 (1975). This language merely paraphrases the plain language of the statute; Rule 6(e) quite specifically prohibits disclosure of grand jury documents save under specified conditions.
[24] Limited CID authority was conferred upon the Attorney General by the Antitrust Civil Process Act of 1962, Pub. L. 87-664, 76 Stat. 548. The Attorney General's powers were considerably expanded by Title I of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, codified at 15 U. S. C. § 1311 et seq. (1976 ed. and Supp. V).
[25] See H. R. Rep. No. 94-1343, pp. 3, 8, 18 (1976); S. Rep. No. 94-803, supra n. 18, at 30-31; 122 Cong. Rec. 29341 (1976) (explanation of House-Senate compromise bill by Sen. Hart).
[26] Indeed, the House Report explains the Justice Department's need for increased CID powers by canvassing the inadequacy of each alternative, including grand jury investigations, for civil enforcement purposes.

"The Division might try to empanel a grand jury, as it currently does in criminal antitrust investigations, and use the sweeping, compulsory powers of that investigative body to unearth evidence of civil violations. But the U. S. Supreme Court has virtually eliminated the Antitrust Division's power to utilize the grand jury as a civil investigative tool. In United States v. Procter & Gamble, 356 U. S. 677 (1958), Justice Douglas concluded that `if the prosecution were using . . . criminal procedures to elicit evidence in a civil case, it would be flouting the policy of the law.' That is because such a use of the grand jury would subvert the Division's policy of proceeding criminally only against flagrant, willful offenses, and would debase the law `by tarring respectable citizens with the brush of crime when their deeds involve no criminality.' " H. R. Rep. No. 94-1343, supra, at 5.
[27] Brief for Petitioner 14-15.

Although the State cites passages from hearings to show that Congress was aware of the Justice Department's use of the grand jury, id., at 16, n. 4, these passages stressed that grand jury investigations were of limited usefulness in civil enforcement and urged the adoption of strengthened CID powers.
[28] Congress has, on occasion, done precisely that. In 1966 it approved amendments to Rule 16 that gave defendants a right to obtain copies of their prior statements before grand juries; Fed. Rule Crim. Proc. 16(a)(1)(A). In 1977, it amended Rule 6(e) to permit disclosure of grand jury materials to personnel assisting United States Government attorneys in the enforcement of federal criminal law. Fed. Rule Crim. Proc. 6(e)(3)(A). See also 18 U. S. C. § 3500(e)(3) (Jencks Act).
[29] The 1976 legislation was designed to enhance the effectiveness of antitrust enforcement on behalf of small consumers. The availability of information to antitrust plaintiffs, however, was not at the forefront of legislative deliberations. Congress focused on the difficulty of achieving class certification of consumer actions under Rule 23 of the Federal Rules of Civil Procedure and the complexity of measuring and distributing damages in such cases. See generally H. R. Rep. No. 94-499, supra n. 23, at 3-8; S. Rep. No. 94-803, supra n. 18, at 6-7, 39-40. To remedy these problems, the 1976 statute permits state attorneys general the right to institute parens patriae suits on behalf of state residents, 15 U. S. C. § 15c; exempts such suits from the class-action requirements of Rule 23, § 15c(a); and allows damages in these suits to be computed through aggregation techniques, § 15d. Therefore the State exaggerates when it asserts that the 1976 Act's purposes would be frustrated if Rule 6(e) continued to be applied to state requests for access to grand jury materials.