STATE OF ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

BOARD OF EDUCATION OF EVANS-
TON TOWNSHIP HIGH SCHOOL
DIST. NO. 202, COOK COUNTY, ILLI-
NOIS, et al., Plaintiffs,

v.

ADMIRAL HEATING AND VENTILA-
TION, INC., et al., Defendants.

BOARD OF EDUCATION OF TOWN-
SHIP HIGH SCHOOL DIST. NO. 205,
COOK COUNTY, ILLINOIS, et al.,
Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 C 5253, 79 C 3046 and 79
C 3077.

United States District Court,
N.D. Illinois, E.D.

March 15, 1983.

On Objections to Release of Grand Jury
Testimony March 30, 1983.

See also, D.C., 513 F.Supp. 600, D.C.,
659 F.2d 800.

Bruce J. Baker, Asst. Ill. Atty. Gen., Chicago, Ill., for plaintiffs.

Arnold Shure, Northbrook, Ill., for defendant Wanzenberg.

Anna Lavin, Chicago, Ill., for defendant Adams.

Robert J. Zaideman, James Chapman & Associates, Chicago, Ill., for other defendants.

Peter A. Mullin, Washington, D.C., for the U.S.

John E. Burke, Ross & Hardies, Chicago, Ill., for defendants F.E. Moran, Inc. and Owen A. Moran.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These three class actions[1] charge 22 piping construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 to 1977 in violation of the Sherman Act. Plaintiffs have petitioned under Fed.R. Crim.P. ("Crim. Rule") 6(e)(3)(C)(i) for an order directing Joseph Widmar ("Widmar") and Robert Allen ("Allen"), of the United States Department of Justice ("DOJ") Antitrust Division, to produce for inspection and copying certain transcripts of grand jury testimony[2] with related exhibits.[3] Wanzenberg has joined in the petition as to his own grand jury testimony. For the reasons stated in this memorandum opinion and order, plaintiffs' and Wanzenberg's petitions are granted in part on specified conditions and denied in part.

### Background

On January 31, 1979 a federal grand jury empanelled in this district indicted 21 piping construction companies and six individual officers for Sherman Act violations. *United States v. S.J. Reynolds, Inc.,* 79 CR 66; *United States v. Borg, Inc.,* 79 CR 67. All defendants except Kelleher, Inc. ("Kelleher") pleaded nolo contendere. Kelleher was tried, convicted and, on December 17, 1979, sentenced.

Approximately 60 witnesses testified before the piping case grand jury.[4] By his April 4, 1979 protective order Judge Bua (to whom the criminal case was then assigned) permitted disclosure to criminal defense counsel of all documents obtained by grand jury subpoenas. Each defendant who had testified before the grand jury was also offered a transcript of his testimony, as required by Crim. Rule 16 and this district's Local Rule 2.04. In the case of corporate defendants the offer included the testimony

---

1. 79 C 3046 and 79 C 3077 are fully consolidated. 79 C 5253 is consolidated for discovery purposes only.

2. Plaintiffs originally petitioned for access to testimony of three defendants: Henry Wanzenberg ("Wanzenberg"), Stanley Bellis ("Bellis") and William Adams ("Adams"). In their R.Mem. 8 n. 7, however, plaintiffs seek to expand their request to cover testimony of seven other settling defendants. Although this Court (1) does not doubt plaintiffs' assurance their expanded request raises no additional issues and (2) appreciates plaintiffs' expressed concern for judicial economy, the fact remains interested parties have not been given an official opportunity to respond to plaintiffs' expanded petition. Moreover this opinion makes it clear no blanket rule covers all such testimo-

ny. This Court will therefore restrict its consideration to the petition as originally filed. Any future petitions as to other transcripts can be handled economically enough in light of this opinion.

3. Evidently the requested exhibits are part and parcel of the grand jury testimony, not separate documents to which less exacting secrecy requirements might apply. *See In re Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1089–90 (7th Cir.1982).

4. Those 60-odd witnesses included both named defendants and some unindicted co-conspirators. Unindicted co-conspirators' identities were revealed in a publicly-filed DOJ Voluntary Bill of Particulars.

of all current and former officers and employees. On May 2, 1979 Judge Bua further ordered DOJ to make available to defense counsel and counsel for prospective witnesses transcripts of the testimony of all witnesses who had appeared before the grand jury. That disclosure was subject to the terms of the April 4 protective order.

In a January 8, 1981 memorandum opinion and order (Suppressed Doc. No. 80 C 0888), then Chief Judge Parsons denied the petition of plaintiffs in these actions for an order permitting release of all piping grand jury transcripts and subpoenaed documents.[5] Judge Parsons left open the possibility (slip op. at 13–14) plaintiffs might renew or revise their petition at a later point in this litigation. They have now done so.

### Governing Law

Crim. Rule 6(e)(3)(C)(i) provides:

Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

... when so directed by a court preliminarily to or in connection with a judicial proceeding.

In *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), the Supreme Court taught (footnote omitted):

Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the

grand jury whose transcripts are sought has concluded its operations . . . .

It also specifically noted (*id.* at 223, 99 S.Ct. at 1675) the burden on the party seeking disclosure lessens "as the considerations justifying secrecy become less relevant," citing *Illinois v. Sarbaugh,* 552 F.2d 768, 774 (7th Cir.), *cert. denied sub nom. J.L. Simmons Co. v. Illinois,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

*Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675 thus set out this Court's duty under Crim. Rule 6(e) "to weigh carefully the competing interests in light of the relevant circumstances." That weighing process is to determine whether a petitioner has shown "a particularized need" for disclosure that outweighs "the interest in continued grand jury secrecy." *Id.*

### Plaintiffs' and Wanzenberg's Petitions

Plaintiffs seek grand jury testimony of Wanzenberg, Bellis and Adams [6] in advance of taking their depositions. Plaintiffs believe (Mem. 2) "particularized need" is shown by a request for those particular transcripts for that particular purpose, assertedly curing the defect of their earlier broad petition to Judge Parsons. More precisely plaintiffs contend (Mem. 9) they show an adequate "particularized need" by their desire to use the transcripts "for the purpose of impeachment, refreshing recollection and testing credibility" in connection with the planned depositions.

Wanzenberg admits (Pet. ¶ 4) his petition has been filed in accord with a provision in a proposed settlement agreement with plaintiffs. He asserts (*id.* ¶ 5) he needs the transcript of his own grand jury testimony

---

5. In No. 79 C 5253 the Illinois Attorney General petitioned for all grand jury materials under Section 4F(b) of the Antitrust Improvements Act of 1976, 15 U.S.C. § 15f(b). Chief Judge Parsons' denial of that petition was affirmed, *In re State of Illinois Petition To Inspect And Copy Grand Jury Materials,* 659 F.2d 800 (7th Cir.1981), *aff'd sub nom., Illinois v. Abbott & Associates, Inc.,* —— U.S. ——, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983). Apparently no appeal was taken from Judge Parsons' denial as it related to plaintiffs' petition under Crim. Rule 6(e)(3)(C)(i).

6. Plaintiffs say (Mem. 1 n. 1) they do not know who among the criminal defendants and unindicted co-conspirators actually testified before the piping grand jury. They suggest (*id.*) this Court order DOJ to produce a witness list for *in camera* inspection. But plaintiffs may *petition* for transcripts even when they are unsure such transcripts exist, which in fact is the case as to Bellis and Adams (*id.* at 2). DOJ does not oppose release of the piping grand jury transcripts, so ordering production "if he testified" seems entirely adequate.

from four years ago to assist him "in recalling specific events and in more accurately being able to remember dates and details of these events." Wanzenberg also adopts (*id.* ¶ 9) the arguments of plaintiffs' supporting memorandum.

This Court invited DOJ, not a party to these actions, to respond to plaintiffs' petition. *See Sarbaugh,* 552 F.2d at 777 n. 14. DOJ has indicated (Mem. 2–3) (1) it does not oppose disclosure, (2) it contemplates no further action in its piping antitrust investigation and (3) it expects no economic or other retaliation to occur if disclosure to plaintiffs is ordered.

Defendants oppose Wanzenberg's petition but have not specifically opposed plaintiffs' petition. Defendants contend:

1. Wanzenberg's testimony has not in fact been seen by the "vast majority" of defendants in these actions. Ans. Mem. 3, 7.

2. Wanzenberg's asserted "particularized need" is specious in light of his settlement agreement obligation to petition this Court under Crim. Rule 6(e). Instead the petition is really plaintiffs' attempt to substitute for discovery. Ans. Mem. 5–7.

3. Wanzenberg has not identified what particular portions of his grand jury testimony he needs. *Id.* at 8.

Adams opposes disclosure of his grand jury testimony. He contends in a rather opaque memorandum:[7]

1. Although grand jury testimony might be needed *at trial* for impeachment or other purposes, it is premature to assert such needs in connection with depositions. Ans. Mem. 2.

2. Plaintiffs' admission they do not *know* Adams testified before the piping grand jury shows they seek confidential information to which they are not entitled. *Id.* at 3.

3. Any prior disclosure is uncertain in extent and was possibly illegal. *Id.* at 4–5.

4. *Adams'* counsel has not participated in the joint defense of these actions and the information-sharing that implies. *Id.* at 5.

*Applying the Law to These Circumstances*

Based on the *Douglas Oil* articulation of the relevant standards, it is difficult to conclude plaintiffs have borne either their positive or their negative burdens:

On the positive side, they have not really *shown* they need the grand jury transcripts to avoid injustice in these actions. Indeed any such showing is problematic *before* they take the planned depositions and identify what parts of the depositions seem suspect or incomplete—in that event possibly also identifying precisely what subjects would require disclosure of grand jury testimony. As it is, plaintiffs' asserted *need* is really only their *desire*—hardly enough, one would surmise, to outweigh any continuing interest in grand jury secrecy.

On the negative side, plaintiffs (and Wanzenberg as well) *have* done an adequate job of showing why there should be little present concern for secrecy as to the piping grand jury's work. Mem. 5–10. True, as defendants and Adams contend and as plaintiffs themselves admit (R. Mem. 2–3), the full extent of prior disclosure is impossible to determine. But under the circumstances of these cases it is scarcely conceivable that whatever disclosure has occurred has not inured to the benefit of all defendants. *See id.* at 3 & n. 3; Mem. 7. Even so, such considerations about grand jury secrecy are tied only to a *particular* grand jury's work. *See Douglas Oil,* 441 U.S. at 219 & n. 10, 99 S.Ct. at 1673 & n. 10.

But there is an institutional dimension to the need to preserve grand jury secrecy. As the Supreme Court said (*id.* at 222, 99 S.Ct. at 1674):

For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons

---

**7.** Opacity has been a hallmark of all Adams' written submissions in these cases.

called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.[8]

That language indicates Crim. Rule 6(e) petitioners ought also to show why their need for disclosure outweighs the public interest in future grand jury secrecy. At the least, such an obligation would require a greater showing of "particularized need" than is required when the only thing on the other side of the ledger is the desirability of secrecy about one grand jury's past and previously disclosed product.

This Court is of course also governed by *Sarbaugh* (to the extent it is not cast in doubt by the later opinion in *Douglas Oil*). *Sarbaugh* taught:

1. After discharge of a grand jury in an antitrust case, the residual need for secrecy is the need to protect witnesses from retaliation. That concern largely evaporates when employers have already had access to their own employees' testimony, and thus only retaliation by others in the industry remains relevant. 552 F.2d at 775.

2. Sharing of disclosed transcripts among codefendants reduces the importance of maintaining secrecy. There is, however, a "residual secrecy deserving of some protection" when actual sharing has not been unrestrained. *Id.*

3. Depositions as well as trial testimony may give rise to a "particularized need" for disclosure. *Id.* at 776.

4. It is unfair to allow one side to have exclusive access to grand jury materials. *Id.*

5. It is unnecessary to follow a procedure for *in camera* court inspection of deposition and grand jury testimony prior to deciding a petition for disclosure. *Id.* at 776–77.

Had *Sarbaugh* survived *Douglas Oil* intact, this Court would be constrained to hold, under the present circumstances of these cases, the necessary "particularized need" can be shown simply by a grand jury witness' being called for a deposition. *Cf. Sarbaugh,* 552 F.2d at 777:

> Given the residual reason for secrecy in a case such as this, we believe that a particularized need for the limited disclosure we prescribe below is sufficiently shown if the corporate employer of the grand jury witness whose transcript is sought has obtained a copy of that transcript, and the witness is scheduled to be called to give testimony either at trial or by deposition on the matters about which he testified before the grand jury.

However, *Sarbaugh* identified only that one aspect of the residual need for grand jury secrecy—it did not anticipate the already-quoted separate institutional consideration ("the possible effect upon the functioning of future grand juries") underscored in *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674:

> Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.

That chilling factor as to future cases remains intact despite the absence of a potential for retaliation in the present case (*id.* at 222 n. 13, 99 S.Ct. at 1674 n. 13). Accordingly this Court must add it to the *Sarbaugh* equation.[9]

■ Under those circumstances the Wanzenberg testimony must be produced, for (1) a release based on the witness' (here Wanzenberg's) own consent cannot subvert the quoted concern and (2) every other factor is satisfied by *Sarbaugh.* Bellis' testimony will also be produced, for he has not

---

8. *Douglas Oil* then went on to discuss the danger of retribution against a witness, say by his employer, if his grand jury testimony were disclosed. But 441 U.S. at 222 n. 13, 99 S.Ct. at 1674 n. 13 reflects the Court's institutional concerns were separate from any possible retribution following upon disclosure of particular grand jury testimony.

9. Although this Court (having dealt with the problem as a practitioner in the related context of confidentiality of complaints to the Illinois Judicial Inquiry Board) called on DOJ to respond to plaintiffs' petition precisely because of the Court's concern in this area, DOJ manifested no understanding at all of this important component of the public interest. At least it did not even speak to the problem in its submission. Accordingly this Court has had to address the issue on its own.

objected and the same analysis extends to a non-objector. Adams' testimony will not be produced, though, because no "particularized need" has been placed in the scales to overcome the *Douglas Oil* institutional factor.[10]

Even as to Wanzenberg and Bellis, *Sarbaugh* upholds disclosure only in terms meant to protect the "residual secrecy" that survives the passing of the threat of retaliation and the possibility prior disclosure has not in fact been widespread. 552 F.2d at 777. Those terms are incorporated in the order below, granting plaintiffs' and Wanzenberg's petitions in part.

### Conclusion

Widmar and Allen are hereby ordered (1) to produce transcripts of any piping grand jury testimony by Wanzenberg and Bellis with related exhibits and (2) to release those materials on the following terms:

(a) Plaintiffs shall designate one attorney to act, and Thomas Burke is designated as the attorney to act for defendants, in receiving those materials.

(b) Each designated attorney shall keep and ultimately file with this Court a log showing to whom and when each transcript or portion has been shown.

(c) Copying the transcripts and related exhibits is prohibited, and the designated attorneys shall ultimately certify to this Court that prohibition has been honored.

(d) All transcripts and related exhibits shall be returned to DOJ within 21 days after completion of the planned depositions.

To allow any defendant to object that a portion of any transcript is unrelated to issues in these actions, the release hereby ordered shall not occur before March 31, 1983. Any objections by any defendants shall be delivered to this Court on or before March 28, 1983.

---

**10.** This ruling is without prejudice to reassertion of the motion based on an appropriate showing after the Adams deposition has been taken.

**1.** 79 C 3046 and 79 C 3077 are fully consolidated. 79 C 5253 is consolidated for discovery purposes only.

### ON OBJECTIONS TO RELEASE OF GRAND JURY TESTIMONY

These three class actions[1] charge 22 piping construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 to 1977 in violation of the Sherman Act. This Court's March 15, 1983 memorandum opinion and order (the "Opinion") directed Joseph Widmar ("Widmar") and Robert Allen ("Allen"), of the United States Department of Justice Antitrust Division, to produce and release transcripts of the piping grand jury[2] testimony of Henry Wanzenberg ("Wanzenberg") and Stanley Bellis ("Bellis"). Opinion at 101 delayed that release until March 31, 1983 to allow any defendants to object on the ground that portions of transcripts to be released are unrelated to issues in these actions.

Defendants F.E. Moran, Inc. and Owen A. Moran (collectively "Morans") have now objected to the release of the grand jury testimony of both Wanzenberg and Bellis on a more fundamental basis—really a motion for reconsideration on the merits. Alternatively, should this Court order release over those objections, Morans have moved for a stay pending an appeal by Morans. For the reasons stated in this memorandum opinion and order, Morans' objections are overruled and Morans' motion for a stay is denied.

Opinion at 99–100 expressed a concern for the "institutional dimension to the need to preserve grand jury secrecy," adhering to the Supreme Court's teaching in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). That "institutional dimension" involves the chilling effect on future grand jury witnesses of the fear their testimony might someday be released to outside parties. *Id.;* Opinion at 100–01.

---

**2.** That grand jury returned indictments in *United States v. S.J. Reynolds, Inc.,* 79 CR 66 and *United States v. Borg, Inc.,* 79 CR 67.

Opinion at 100–01 made clear, however, that identified institutional concern ceased to be a factor when a witness consented or did not object to release of his grand jury testimony. Morans (Mem. ¶ 2) admit both Wanzenberg and Bellis have consented to release of their grand jury testimony, but Morans argue (*id.*) those consents are suspect because they were granted as part of settlement agreements reached between plaintiffs and Wanzenberg and Bellis. Morans' contention is absurd.

By definition the "chilling effect" this Court identified turns on a witness' fear his grand jury testimony might someday be released without his consent. *Douglas Oil* reflects the judgment a grand jury witness ought to be able to count on the secrecy of his testimony absent exceptional circumstances or absent his own consent to its release.

Just as obviously it makes no difference how a witness' voluntary consent is packaged. Each of Wanzenberg and Bellis has weighed his interest in the continued secrecy of his grand jury testimony along with his other interests, and each has consented to release of his testimony as part of a negotiated settlement in these actions.[3] There can be no chilling effect on future grand jury witnesses, because release under the present circumstances preserves whatever power a witness has to guarantee the continued secrecy of his grand jury testimony.

Morans have made no attempt to show that portions of the transcripts ordered released are unrelated to issues in these actions. Nor have Morans suggested any grounds justifying a stay of this Court's order to release the grand jury testimony of Wanzenberg and Bellis with their consent.

Morans' objections are therefore overruled,[4] and Morans' motion for a stay is denied. Widmar and Allen are hereby ordered to proceed under the terms of the Opinion.

**3.** Morans' notion (Mem. ¶¶ 3–4) the consents of Wanzenberg and Bellis were obtained by "economic duress" is entirely unsupported. Both Wanzenberg and Bellis are experienced businessmen represented by counsel. Neither is a widow or an orphan. Neither is complaining here, and Morans do not explain how *they* have standing to do so. What is conclusive for purposes of the current motion, though, is that future grand jury witnesses—for whose benefit the notion of "chilling effect" has been devised—can rest easy in the assurances that their testimony can be released only on their agreement (or perhaps under "exceptional cir-

cumstances" that do not implicate the present discussion at all) and that *they* can attack any such agreement if obtained by duress.

**4.** After this opinion was prepared the Supreme Court decided *Illinois v. Abbott & Associates, Inc.*, —— U.S. ——, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983), a case growing out of these actions. Nothing in *Abbott* affects the Opinion or this opinion, for it simply reconfirms the particularized need test of *Douglas Oil*—the very test this Court has applied.