[No. H019369. Sixth Dist. Feb. 18, 2000.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
HIKMAT MUSTAFA MOUCHAOURAB, Real Party in Interest.

[And four other cases.]†

†*People v. Superior Court (Baez)* (No. H019706); *People v. Superior Court (Avant! Corp.)* (No. H019849); *People v. Superior Court (Bautista)* (No. H020073); *People v. Superior Court (Gracia)* (No. H020156).

406

**COUNSEL**

George W. Kennedy, District Attorney, William W. Larsen, Assistant District Attorney, and Matthew Braker, Deputy District Attorney, for Petitioner in No. H019369.

George W. Kennedy, District Attorney, William W. Larsen, Assistant District Attorney, and Robert Baker, Deputy District Attorney, for Petitioner in No. H019706.

No appearance for Respondent.

Jose R. Villarreal, Public Defender, and Gregory C. Paraskou, Deputy Public Defender, for Real Party in Interest in No. H019369.

John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Respondent Superior Court and Real Party in Interest Hikmat Mustafa Mouchaourab.

Nolan & Armstrong, Thomas J. Nolan, Mara I. Kapelovitz and Gerald Uelmen for Real Party in Interest in No. H019706.

O'Melveny & Myers, Daniel H. Bookin and Michael F. Tubach for Real Party in Interest in No. H019849.

Berndt Ingo Brauer for Real Party in Interest in No. H020073.

Jose R. Villarreal, Public Defender, and Charlie Gillan, Deputy Public Defender, for Real Party in Interest in No. H020156.

---

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—In these original proceedings, we consider a significant issue of criminal procedure: to what extent may an indicted defendant obtain discovery of nontestimonial grand jury proceedings for the purpose of preparing a Penal Code section 995 motion to dismiss the indictment on grounds of lack of probable cause?[1] Our Supreme Court has recognized that the grand jury's ability to consider the evidence impartially and independently in order to determine whether there is probable cause to indict may be prejudiced by the manner in which the prosecutor conducts the grand jury proceedings, including advice, instructions and argument. (*People v. Backus* (1979) 23 Cal.3d 360, 393 [152 Cal.Rptr. 710, 590 P.2d 837]; *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1022, fn. 1 [13 Cal.Rptr.2d 551, 839 P.2d 1059].) In light of this recognition by the Supreme Court, it follows that a defendant may review these communications between the prosecutor and the grand jury in order to prepare a motion to set aside an indictment on grounds of lack of probable cause under section 995.

Here respondent court ordered the People to produce, among other things, transcripts of all communications between the prosecutor and the grand jury,

---

[1]All statutory references hereafter are to the Penal Code unless otherwise noted.

the prosecutor's opening and closing remarks and argument, and all responses to requests by the grand jury for read-backs of witness testimony, as well as the superior court's answers to grand jurors' questions. Because such communications could have some bearing on the grand jury's determination of probable cause, and therefore on the defendants' ability to pursue their rights under section 995, we conclude respondent court acted within its discretion in making these orders.

However, respondent court made further orders compelling the People to produce records of all persons present during the grand jury proceedings, roll calls of the grand jurors, and the dates and lengths of grand jury deliberation sessions. Neither the identities of all persons present during the proceedings nor the dates and lengths of grand jury deliberations are grounds cognizable in a section 995 motion to set aside the indictment. The names of the individual grand jurors are likewise not relevant to such a motion. Since there exists no justification for violating the rule of grand jury secrecy in these respects, we conclude that these portions of respondent court's orders were an abuse of discretion.

As set forth below, we therefore deny in part the People's petitions for writs of mandate and grant them in part.

## I. Case Summaries

We consider together five cases. In each case, the People voluntarily provided to defendant transcripts of the witness testimony, the district attorney's presentation of exculpatory evidence, the district attorney's admonishments regarding evidence admissible for a limited purpose, and the superior court's charge to the grand jury. Each defendant moved for an order compelling the district attorney to augment these transcripts by producing additional records and transcripts of the grand jury proceedings. The subsections below summarize the discovery sought and respondent court's orders in each case. The People petitioned for extraordinary relief from respondent court's orders, and we issued an alternative writ and order to show cause in each case, as well as a temporary stay of each order while our review was pending.

*People v. Superior Court (Mouchaourab) (H019369)*

On December 2, 1997, defendant Mouchaourab was indicted by the grand jury on charges of murder (§ 187), attempted murder (§§ 664/187), first degree burglary (§§ 459 and 460, subd. (a)), and grand theft (§§ 484/487, subd. (d)).

The People provided a copy of the transcript of witness testimony to defendant. Subsequently, defendant sought discovery of additional grand jury transcripts by making an informal written request to the district attorney for production of the following: (1) transcripts of the charge and instruction by the court to the grand jury at the time of indictment; (2) transcripts of any advice given or instruction in law given by the court or the district attorney; (3) transcripts of the roll calls or a list of names of the grand jurors present for each day of testimony, instruction, deliberation and return of a true bill; (4) a list of all persons present during each day of grand jury proceedings; (5) a record of when and for how long each session of grand jury deliberations occurred; (6) a transcript of the district attorney's opening and closing remarks and argument; (7) a record of all questions by grand jurors to the district attorney; (8) a record of all questions to the court by the grand jurors and the answers given by the court; (9) the jury list from which the grand jurors were chosen; (10) a list of names, street addresses and zip codes of grand jurors; (11) the actual system used for drawing juror names and to compose the grand jury; and (12) a list, record or transcript of the process by which prospective grand jurors were accepted, along with findings of qualifications and excusals granted.

The People voluntarily complied with requests (11) and (12) by producing a transcript of the grand juror impanelment proceedings and copies of orders replacing three jurors with alternates (with names redacted). The People also inadvertently produced a transcript of the superior court's charge to the grand jury, thus complying with request (1).[2] However, the People refused to disclose any other portions of the grand jury record in response to defendant's requests. Defendant then filed a motion for an order compelling the People to augment the grand jury transcript with all records and transcripts sought in his informal request which the district attorney had refused to produce.

In ruling on defendant's motion, the trial court employed a balancing test and determined that defendant's right to information about grand jury proceedings outweighed the purpose for grand jury secrecy. However the court was concerned about privacy issues with regard to revealing the names of the grand jurors. Therefore, the court granted defendant's motion for augmentation as to all items requested, with the exception of the release of the names and identifying information of the grand jurors. Thus requests number (9) and number (10) were denied without prejudice to a further showing of necessity by defendant. As to request number (3), for roll calls or a list of the names of the grand jurors present for each day, the court granted the request

---

[2]During the course of these proceedings, the People voluntarily provided to the other defendants a copy of the superior court's charge to the grand jury.

in terms of how many grand jurors were present, but ordered that the names themselves be redacted. Finally, as to request number (5), for a record of when and how long each session of grand jury deliberations occurred, the court granted disclosure of "the record on the days the grand jurors met."

*People v. Superior Court (Gracia) (H020156)*

Defendant Gracia was indicted by the grand jury on April 21, 1999, on several counts, including lewd or lascivious act on a child under age 14 (§ 288, subd. (a)), child endangerment (§ 273a, subd. (b)), cruelty toward a child (§ 273a, subd. (a)), assaulting a child with deadly force (§ 273a, subd. (b)), murder of a child (§ 187), inflicting corporal injury upon a spouse (§ 273.5, subd. (a)), assault with a deadly weapon (§ 245, subd. (a)(1)), and false imprisonment (§§ 236/237).

After being provided with a record of the witness testimony, defendant filed a motion for augmentation of the record, which sought an order compelling the People to produce 12 additional items from the record of grand jury proceedings. This motion was virtually identical to the motion for augmentation filed by defendant Mouchaourab and included requests for: (1) transcripts of the charge and instruction by the court to the grand jury at the time of indictment; (2) transcripts of any advice given or instruction in law given by the court or the district attorney; (3) transcripts of the roll calls or a list of names of the grand jurors present for each day of testimony, instruction, deliberation and return of a true bill; (4) a list of all persons present during each day of grand jury proceedings; (5) a record of when and for how long each session of grand jury deliberations occurred; (6) a transcript of district attorney's opening and closing remarks and argument; (7) a record of all questions by grand jurors to the district attorney; (8) a record of all questions to the court by the grand jurors and the answers given by the court; (9) the jury list from which the grand jurors were chosen; (10) a list of names, street addresses and zip codes of grand jurors; (11) the actual system used for drawing juror names and to compose the grand jury; and (12) a list, record or transcript of the process by which prospective grand jurors were accepted, along with findings of qualifications and excusals granted. As in *People v. Mouchaourab*, the People do not object to compliance with requests number (1), (11) or (12).

In *People v. Gracia*, respondent court ruled differently than it had in *People v. Mouchaourab*. The trial court's minute order (the only order included in our record) indicates that defendant Gracia's motion was granted as to items (1) through (8), and denied as to items (9) through (12). Thus the court in *Gracia*, unlike the court in *Mouchaourab*, granted defendant's

requests number (3), for transcripts of the roll calls or a list of the names of the grand jurors present each day, and number (5), for a record of when and how long each session of grand jury deliberations occurred, both without limitation.

*People v. Superior Court (Avant! Corp.) (H019849)*

Avant! Corporation and eight individual defendants (collectively, the Avant defendants) were indicted by the grand jury on December 16, 1998, on counts of conspiracy to steal trade secrets (§ 499c, subd. (b)(1)), theft in excess of $2.5 million (§ 12022.6, subd. (d)), inducing theft of trade secrets (§ 499c, subd. (c)), theft of trade secrets (§ 499c, subd. (b)(4)), conspiracy to commit a crime (§ 182, subd. (a)(1)), and fraudulent practices in connection with offer or sale of security (Corp. Code, § 25541).[3]

The Avant defendants filed a motion for augmentation of the grand jury transcript and record. In their motion, the Avant defendants sought the following records: "1. Transcripts of any advice or instruction in the law pertaining specifically to this case given to the grand jury by any representative of the district attorney's office; [¶] 2. Transcripts of all requests for additional evidence, testimony, and any questions asked by grand jurors which were submitted to any representative of the district attorney's office during testimony, instructions, or deliberations; [¶] 3. Transcripts of all responses or read-backs made by any court reporter, witness or any representative of the district attorney's office in response to any question or request submitted by the grand jurors; [¶] 4. Transcripts of all opening remarks and all arguments or comments made to or in the presence of the grand jury by any representative of the district attorney's office."

The trial court found good cause was shown that defendants had a need for further records and transcripts of grand jury proceedings and granted the Avant defendants' motion for augmentation in its entirety. The court also directed the court reporter to transcribe all notes of the grand jury proceedings not already transcribed.

*People v. Superior Court (Baez) (H019706)*

Defendant Baez was indicted by the grand jury on May 14, 1998, on counts of violating Health and Safety Code provisions prohibiting the transportation and sale of marijuana (Health & Saf. Code, § 11360, subd. (a)) and maintaining a place for sale of marijuana (Health & Saf. Code, § 11366), as

---

[3]The eight individual defendants included Chih-Liang Cheng, Leigh Huang, Eric Cho, Mitsuru Igusa, Y.Z. Liao, Stephen Wuu, Mike Tsai, and Gerald Hsu.

well as grand theft of money from the United States Department of Housing and Urban Development (Pen. Code, §§ 484/487, subd. (a)).

After indictment, defendant filed a motion to augment the grand jury transcript and record. The motion sought disclosure of the following transcripts: (1) advice or instruction in the law given to the grand jury by the district attorney's office; (2) all requests for additional evidence and questions by the grand jury; (3) all responses and read-backs by the court reporter; and (4) all argument and comment made on the evidence by the district attorney's office.

As grounds for the motion for augmentation, defendant argued that a witness had given testimony which incorrectly interpreted the law and that a motion to dismiss under section 995 could not be prepared unless defense counsel had the opportunity to review the transcript of the district attorney's instructions and advice to determine if the erroneous testimony had been cured. The People contended that the ground asserted by defendant was not cognizable under section 995.

The trial court granted defendant's motion for augmentation of the grand jury transcript in part and denied it in part. Augmentation was granted only as to defendant's request number (1), for a transcript of all advice and instructions given by the prosecutor. The court explained that the basis for its ruling was to allow defendant the opportunity to meaningfully present a section 995 motion on the ground that instructional error had occurred in the grand jury proceedings.

*People v. Superior Court (Bautista) (H020073)*

On June 16, 1998, defendant Bautista was indicted by the grand jury on counts of attempted murder (§§ 664, subd. (a)/187) and assault with a deadly weapon (§ 245, subd. (a)(1)). Defendant moved postindictment for augmentation of the transcript, seeking discovery of the record of "all communications between the grand jury and any representative of the district attorney's office."

The trial court granted defendant's motion on grounds that, absent discovery of nontestimonial grand jury proceedings, "the District Attorney of this county could avoid review of potentially significant constitutional errors, by the simple expedient of withholding from the defendant the means (a transcript) to demonstrate those errors to the court." The trial court's augmentation order compelled the district attorney to provide defendant "with a transcript of the charge given to the grand jury, with a transcript of all

interactions between the prosecution and the grand jurors, with a transcript of all comments and statements made to the grand jury by the prosecution, and with a copy of the instructions given to the grand jury."

## II. BACKGROUND

■ We examine these orders of respondent court for abuse of discretion. (*People v. Ashmus* (1991) 54 Cal.3d 932, 979 [2 Cal.Rptr.2d 112, 820 P.2d 214].) "Abuse of discretion" has been defined as follows: " 'The discretion intended . . . is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066 [24 Cal.Rptr.2d 654], quoting *Bailey v. Taaffe* (1866) 29 Cal. 422, 424, italics omitted.)

As a threshold issue, we note that the People are authorized, pursuant to section 1511, to seek appellate review of an order granting a defendant's motion for discovery by way of a petition for writ of mandate or prohibition.[4] ■ In addition, writ review is appropriate when the petitioner "seeks relief from a discovery order which may undermine a privilege, because appellate remedies are not adequate once the privileged information has been disclosed." (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330 [87 Cal.Rptr.2d 813]; see also *Raytheon v. Superior Court* (1989) 208 Cal.App.3d 683, 685 [256 Cal.Rptr. 425].) As with privileged information, disclosure of secret information cannot be remedied on appeal once the information has been disclosed. Writ review is also appropriate to address "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) Here the issue of disclosure of records of grand jury proceedings is one of general importance which has arisen repeatedly in criminal cases involving indicted defendants.

In order to provide the necessary context for determining the issue before us, we will first briefly discuss grand jury proceedings and review the origins and purposes of the rule of secrecy and the statutory bases for

---

[4] Section 1511, subdivision (a), provides: "In addition to petitions for a writ of mandate, prohibition, or review which the people are authorized to file pursuant to any other statute or pursuant to any court decision, the people may also seek review of an order granting a defendant's motion for severance or discovery by a petition for a writ of mandate or prohibition."

transcription and disclosure of the record of grand jury proceedings. Against this backdrop we will then examine the development of a defendant's rights to challenge the indictment, with particular attention to the California Supreme Court cases of *People v. Backus, supra,* 23 Cal.3d. 360, and *Cummiskey v. Superior Court, supra,* 3 Cal.4th 1018.

*Grand Jury Proceedings and the Rule of Secrecy*

"The secrecy of all grand jury proceedings is 'deeply rooted in our traditions.' " (*McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1173 [245 Cal.Rptr. 774, 751 P.2d 1329] (*McClatchy*), quoting *Illinois v. Abbott & Associates, Inc.* (1983) 460 U.S. 557, 572 [103 S.Ct. 1356, 1363-1364, 75 L.Ed.2d 281].) The original purpose of the secrecy requirement, dating back to 12th century England, was to prevent the escape of offenders. Other reasons were to reduce the influence of the monarch, and to guarantee the impartiality of the grand jury. (*Ibid.*) Since the very beginning of the grand jury system, " 'for the most part, grand jury proceedings . . . have been closed to the public and records of such proceedings have been kept from the public eye.' " (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1126 [86 Cal.Rptr.2d 623, 979 P.2d 982] (*Daily Journal*), quoting *McClatchy, supra,* 44 Cal.3d at p. 1173.)

The secret grand jury has been a part of California's criminal justice system since its beginning. In 1849, the first California Constitution provided that no person would be held to answer for a capital or infamous crime "unless on presentment or indictment of a grand jury." (Cal. Const. of 1849, art. I, § 8.) The common law requirement of secrecy in grand jury proceedings was first codified in 1851 in the Criminal Practice Act (hereafter, the Act), and was maintained when California enacted its first Penal Code in 1872. (Stats. 1871-1872, § 926, p. 540; Stats. 1871-1872, § 927, p. 540; see also *Ex parte Sontag* (1884) 64 Cal. 525, 527 [2 P. 402].)

"Although the grand jury was originally derived from the common law, the California Legislature has codified extensive rules defining it and governing its formation and proceedings, including provisions for implementing the long-established tradition of grand jury secrecy. (See Pen. Code, pt. 2, tit. 4, chs. 1-3, §§ 888-939.91; see also Pen. Code, §§ 940-945.)" (*Daily Journal, supra,* 20 Cal.4th at p. 1122.) Today, the whole matter of secrecy and disclosure of grand jury proceedings is regulated by statute. (*Ibid.*) For instance, with the exception of matters affecting the public welfare, where public sessions may be ordered (§ 939.1), all grand jury proceedings are to be conducted in secrecy. (§ 915 [grand jury "shall retire to a private room" to conduct inquiry into offenses].) The district attorney may appear before

the grand jury "at all times" to give information or advice or to question the witnesses. (§ 935.) However, the defendant is not given notice of the proceedings and is not entitled to appear in person or by counsel. (See *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 254 [124 Cal.Rptr. 32, 539 P.2d 792].) Moreover, after initially instructing the grand jury as to its duties, "the judge of the court . . . shall not be present during the sessions of the grand jury" unless the grand jury requests the judge's presence. (§§ 914, 934.) Thus the grand jury is entitled to ask and receive advice from the superior court but is not required to do so. (§ 934; see generally *Farnow v. Superior Court* (1990) 226 Cal.App.3d 481, 489 [276 Cal.Rptr. 275].)

Apart from necessary and authorized appearances, as specified by statute, no person is permitted to be present during criminal sessions of the grand jury except the members of the jury and witnesses actually under examination. (§ 939.) Deliberations of the grand jury are completely private; no person other than the grand jurors themselves may be present during "the expression of the opinions of the grand jurors, or the giving of their votes" on any criminal matter before them. (§ 939.) Grand jurors must take an oath that they will not disclose any evidence brought before the grand jury, anything said by any grand juror, or the manner in which any grand juror voted on any matter before the grand jury. (§ 911; see generally *Daily Journal, supra,* 20 Cal.4th at pp. 1122-1123.)

█ The purposes served by the " 'strong historic policy of preserving grand jury secrecy' " are several. (*McClatchy, supra,* 44 Cal.3d at pp. 1174-1175, quoting *United States v. Sells Engineering, Inc.* (1983) 463 U.S. 418, 428 [103 S.Ct. 3133, 3140, 77 L.Ed.2d 743].) First, secrecy encourages prospective witnesses to come forward and testify fully and frankly, knowing that those against whom they testify will not be made aware of the testimony. Further, there is the risk that those about to be indicted will flee, or will try to influence the grand jurors to vote against the indictment. And finally, " 'by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.' " (*McClatchy, supra,* 44 Cal.3d at pp. 1174-1175.)

The court in *McClatchy* noted that "the encouragement of candid testimony and the protection of witnesses and their reputations are best achieved when secrecy is maintained even after the conclusion of a grand jury investigation." (*McClatchy, supra,* 44 Cal.3d at p. 1175.) The *McClatchy* case, however, did not involve a criminal indictment grand jury (§ 917) but rather a civil grand jury carrying out its "watchdog" function to investigate and report on the affairs of local government. (§§ 919, 925 et seq.) In such a case, there is a purpose to be served by requiring the grand jury to issue a

report stating its findings without revealing the identity of the witnesses or the exact content of their testimony. The court in *McClatchy* acknowledged the difference between this function of the grand jury and the case where a criminal grand jury returns an indictment. Where the grand jury proceeding has resulted in a criminal indictment, the same reasons for maintaining the secrecy requirements are no longer present. This is because the indictment is " 'the first step in a long process in which the accused may seek vindication through exercise of the right to a public trial, to a jury, to counsel, to confrontation of witnesses against him and, if convicted, to an appeal." (*McClatchy, supra,* 44 Cal.3d at p. 1176, quoting *Wood v. Hughes* (1961) 9 N.Y.2d 144 [212 N.Y.S.2d 33, 73 N.E.2d 21].) The risk of flight is less of a concern since the indicted defendant has been accused and presumably will have been arrested. There is no longer a need to prevent the importuning of grand jurors, since they have completed their deliberations and have returned the indictment. And finally, although the grand jurors were sworn to secrecy regarding disclosure of evidence, after the indictment is handed down a transcription of the entire testimony is made available to the indicted defendant, to the district attorney and to the public. (§§ 938, 938.1 [former § 925].)

*Recording and Transcription of Grand Jury Proceedings*

Consistent with the rule of secrecy, neither the 1851 Act nor the first enactment of the Penal Code in 1872 provided for any recording of grand jury proceedings. Grand jurors were permitted to disclose the testimony of witnesses only as required by the trial court in a subsequent trial. (Act, § 218; former Pen. Code, § 925; see *People v. Tinder* (1862) 19 Cal. 539, 545 (conc. opn. of Cope, J.).)

Provision for the recording of grand jury proceedings was first added to the Penal Code in 1897. At that time, the Legislature authorized the reporting and transcribing of testimony in criminal cases by amending former section 925 to provide that "[t]he grand jury, on the demand of the District Attorney, whenever criminal causes are being investigated before them, must appoint a competent stenographic reporter to report the testimony that may be given in such causes in shorthand, and reduce the same afterward, upon the request of the said District Attorney, to longhand; a copy of the said testimony so taken must be delivered to the defendant in any such criminal cause upon the arraignment after indictment of the said defendant." (Stats. 1897, ch. 142, p. 204; *In re Kennedy* (1904) 144 Cal. 634, 635 [78 P. 34].) The reporting of testimony was deemed to be "for the benefit of the district attorney—probably for the purpose of preventing witnesses of a certain character from safely giving testimony before the trial jury differently from that which they have given before the grand jury." (144 Cal. at p. 638.)

Subsequently, the indicted defendant's interest in the testimony transcript became recognized. In 1911 and 1927, respectively, the Legislature again amended former section 925, first to delete the provision that testimony would be transcribed only "upon the request of the . . . District Attorney," and then to delete the provision that testimony would be reported only "on the demand of the District Attorney." (Stats. 1911, ch. 254, § 1, p. 434; Stats. 1927, ch. 684, § 2, p. 1156.) The statute as amended established an indicted defendant's absolute right to a transcript of the testimony, making it mandatory that defendant be served with a copy of the transcript after an indictment had been returned. Courts began to acknowledge that it was necessary for the indicted defendant to be provided with the details of the offense with which he or she was charged in order to prepare for trial. (*People v. Beesly* (1931) 119 Cal.App. 82, 84 [6 P.2d 114]; see also *People v. Yant* (1938) 26 Cal.App.2d 725, 729 [80 P.2d 506].)

In 1959, former section 925 was replaced with sections 938 and 938.1, the current provisions for the reporting and transcribing of testimony. Section 938 provides, in pertinent part, "(a) Whenever criminal causes are being investigated before the grand jury, it shall appoint a competent stenographic reporter. He [or she] shall be sworn and shall report in shorthand the testimony given in such causes and shall transcribe the shorthand in all cases where an indictment is returned or accusation presented." The companion section, section 938.1, provides, in pertinent part, "(a) If an indictment has been found or an accusation presented against a defendant, such stenographic reporter shall certify and deliver to the county clerk an original transcription of his [or her] shorthand notes and a copy thereof and as many additional copies as there are defendants, . . . The county clerk shall file the original of the transcript, deliver a copy of the transcript to the district attorney immediately upon his [or her] receipt thereof and deliver a copy of such transcript to each such defendant or his [or her] attorney. . . . [¶] (b) The transcript shall not be open to the public until 10 days after its delivery to the defendant or his [or her] attorney. Thereafter the transcript shall be open to the public unless the court orders otherwise . . . ." (See Stats. 1959, ch. 501, § 2, pp. 2451-2452.)

The Penal Code is silent as to the reporting and transcribing of any portion of the grand jury proceedings other than testimony pursuant to sections 938 and 938.1. (See, e.g., *Stern v. Superior Court* (1947) 78 Cal.App.2d 9, 13 [177 P.2d 308] ["the testimony given . . . is all that is required to be reported."].) The question to what extent an indicted defendant may discover other portions of the proceedings has developed with the evolution of defendant's rights to challenge the indictment.

*Indicted Defendant's Rights to Challenge the Indictment*

Section 995 provides statutory authority for challenging an indictment. That section provides, in pertinent part, that "(a) . . . the indictment . . . shall be set aside by the court in which the defendant is arraigned, upon his or her motion, in either of the following cases: [¶] (1) . . . [¶] (A) Where it is not found, endorsed, and presented as prescribed in this code. [¶] (B) That the defendant has been indicted without reasonable or probable cause." The second ground regarding reasonable or probable cause was added to the code in 1949. (Stats. 1949, ch. 1311, § 1, p. 2299.) Prior to that, the only grounds available to set aside an indictment were if the indictment was not "found, endorsed, and presented as prescribed in this code."[5]

The 1949 amendment to section 995 adding the "reasonable or probable cause" ground was in response to the Supreme Court's opinion in *Greenberg v. Superior Court* (*Greenberg*) (1942) 19 Cal.2d 319 [121 P.2d 713]. In *Greenberg*, the defendant sought to overturn an indictment on the basis that there was no evidence presented to the grand jury of his guilt of the offense charged. The respondent court denied relief and set the case for trial, finding that California law did not provide a basis to restrain a court from proceeding with a trial on the ground of a lack of evidence of guilt presented to the grand jury. The Supreme Court disagreed, finding that an indictment, like an information, must be supported by reasonable or probable cause. "A grand jury that indicts a person when no evidence has been presented to connect him with the commission of the crime charged, exceeds the authority conferred upon it by the Constitution and laws of the State of California and encroaches upon the right of a person to be free from prosecution for crime unless there is some rational ground for assuming the possibility that he is guilty." (*Id.* at p. 322.)

---

[5]This subdivision refers to defects appearing on the face of the indictment. (*People v. Jefferson* (1956) 47 Cal.2d 438, 442 [303 P.2d 1024].) Section 940 provides that "An indictment cannot be *found* without concurrence of at least 14 grand jurors in a county in which the required number of members of the grand jury prescribed in Section 888.2 is 23, at least eight grand jurors in a county in which the required number of members is 11, and at least 12 grand jurors in all other counties. When so found it shall be *endorsed* 'A true bill', and the endorsement shall be signed by the foreman of the grand jury." (Italics added.) Section 943 provides, "[w]hen an indictment is found, the names of the witnesses examined before the Grand Jury, or whose depositions may have been read before them, must be inserted at the foot of the indictment, or indorsed [*sic*] thereon, before it is presented to the Court." Section 944 provides, "An indictment, when found by the grand jury, must be *presented* by their foreman, in their presence, to the court, and must be filed with the clerk." (Italics added.) It has been held that " '[t]he presenting of the indictment, endorsed as a true bill by its foreman to the court by the grand jury in its own presence, indicates the regularity of all the prior proceedings of that body in the matter.' " (*People v. Yu* (1983) 143 Cal.App.3d 358, 373 [191 Cal.Rptr. 859], quoting *People v. Tennant* (1939) 32 Cal.App.2d 1, 9 [88 P.2d 937].)

The court in *Greenberg* explained that "[a]t common law an indictment returned by a grand jury was unimpeachable because the grand jury proceedings were clothed in secrecy and a court had no access to the evidence upon which the indictment was based. [Citation.] There ceased to be any reason for the common law rule in this state, however, when section 925 of the Penal Code was amended to require that a transcript, available to both defendant and prosecutor, be kept of the testimony introduced before the grand jury in all criminal causes where an indictment is returned." (*Greenberg, supra,* 19 Cal.2d at p. 322.) The court concluded that the grand jury had exceeded its authority by returning an indictment unsupported by evidence. Such an indictment was void and conferred no jurisdiction upon the superior court to proceed with the trial. (*Ibid.*) Following *Greenberg,* courts recognized that the California Constitution "protects a person from prosecution in the absence of a prior determination by either a magistrate or a grand jury that such action is *justified.*" (*Parks v. Superior Court* (1952) 38 Cal.2d 609, 611 [241 P.2d 521], italics added; Cal. Const., art. I, former § 8 [now § 14].)

■ The phrase "reasonable or probable cause" in section 995 has been defined as a determination that " ' " 'a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof.' " ' " (*Cummiskey v. Superior Court, supra,* 3 Cal.4th at pp. 1026-1027, quoting *Lorenson v. Superior Court* (1950) 35 Cal.2d 49, 56 [216 P.2d 859].) In other words, to find probable cause to indict, "the grand jury must determine whether sufficient evidence has been presented to support holding a defendant to answer on a criminal complaint." (*Cummiskey v. Superior Court, supra,* 3 Cal.4th at p. 1027.) Following the 1949 amendment to section 995, it became commonplace for indicted defendants to bring a motion under that section to set aside the indictment on grounds that the transcript showed there was insufficient evidence for the grand jury to find probable cause. (See, e.g., *Buck v. Superior Court* (1966) 245 Cal.App.2d 431, 433-434 [54 Cal.Rptr. 282].)

In *Johnson v. Superior Court, supra,* 15 Cal.3d 248 (*Johnson*), the Supreme Court established a new ground for dismissal of the indictment: the prosecutor's failure to advise the grand jury of the possible existence of exculpatory evidence. The receipt and consideration of exculpatory evidence was governed by section 939.7, which provides as follows: "The grand jury is not required to hear evidence for the defendant, but it shall weigh all the evidence submitted to it, and when it has reason to believe that other evidence within its reach will explain away the charge, it shall order the evidence to be produced, and for that purpose may require the district

attorney to issue process for the witnesses."[6] The court in *Johnson* ruled that when the district attorney was aware of exculpatory evidence, he or she was obligated under section 939.7 "to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced." (*Johnson, supra,* 15 Cal.3d at p. 255.) Failure to do so, the court ruled, could result in dismissal of the indictment. (*Ibid.*)[7]

The court in *Johnson* emphasized the grand jury's protective role " 'to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony . . . .' " (*Johnson, supra,* 15 Cal.3d at p. 253, quoting *Hale v. Henkel* (1906) 201 U.S. 43, 59 [26 S.Ct. 370, 372, 50 L.Ed. 652].) Although the grand jury was duty bound under section 939.7 to weigh all the evidence and to order exculpatory evidence if it had reason to believe such evidence would explain away the charges, the court recognized that the grand jury would ordinarily have no reason to know of the existence of any such evidence unless the district attorney so informed them. The People had argued in *Johnson* that section 939.7 placed the impetus for obtaining exculpatory evidence solely in the hands of the grand jury itself and that the district attorney had no duty to produce evidence unless the jury called for it. The *Johnson* court rejected this argument, explaining that because the grand jury process was not an adversarial proceeding, the district attorney was obligated to inform the grand jury of exculpatory evidence they might not otherwise be aware of. The People's limited construction of section 939.7 would thwart the ability of the grand jury to "weigh all the evidence" and would thereby "nullify its protective role." (*Johnson, supra,* 15 Cal.3d at p. 254.)

The holding of the majority in *Johnson* was based on statutory grounds, namely the court's interpretation of section 939.7. The majority declined to consider the petitioner's due process arguments. However, three justices wrote separately, expressing concern that the grand jury indictment process

---

[6]Section 939.7 replaced former section 920 in 1959. (Stats. 1959, ch. 501, § 2, p. 2454.)

[7]The ruling in *Johnson* was later codified at section 939.71. (Stats. 1997, ch. 22, § 1.) Section 939.71 provides: "(a) If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and existence. Once the prosecutor has informed the grand jury of exculpatory evidence pursuant to this section, the prosecutor shall inform the grand jury of its duties under Section 939.7. If a failure to comply with the provisions of this section results in substantial prejudice, it shall be grounds for dismissal of the portion of the indictment related to that evidence. [¶] (b) It is the intent of the Legislature by enacting this section to codify the holding in Johnson v. Superior Court, 15 Cal. 3d 248, and to affirm the duties of the grand jury pursuant to Section 939.7."

was constitutionally inadequate. (*Johnson, supra,* 15 Cal.3d 248 (conc. opns. of Mosk, J., Wright, C. J., and Tobriner, J.).)[8]

After the rule announced by the court in *Johnson*, indicted defendants could challenge an indictment by a motion under sections 995 and 939.7 on grounds that could necessitate the disclosure of nontestimonial portions of the record of the proceedings. It appears from the opinions in cases considering such motions that courts were able to review parts of the record which included the district attorney's comments and advisements, in addition to testimonial evidence. (See, e.g., *People v. Snow* (1977) 72 Cal.App.3d 950, 958 [140 Cal.Rptr. 427] [record of hearing revealed district attorney advised grand jury of possible exculpatory evidence]; *People v. Laney* (1981) 115 Cal.App.3d 508, 512-513 [171 Cal.Rptr. 493] [posttrial appeal challenging grand jury proceedings included record of district attorney's admonitions and dialogue with witnesses who did not testify]; *People v. Coleman* (1978) 84 Cal.App.3d 1016, 1019 [149 Cal.Rptr. 134] [transcript contained district attorney's comments and answers to grand juror's questions at conclusion of testimonial evidence]; *People v. Backus, supra,* 23 Cal.3d 360, 393 [grand jury advised of certain evidence admissible for a limited purpose]; *Cummiskey v. Superior Court, supra,* 3 Cal.4th 1018, 1031-1032 [transcript of question and answer exchange between grand jurors and district attorney quoted].) Although there was, and still is, no express statute requiring or authorizing the transcription or production of nontestimonial portions of the grand jury proceedings, these cases reveal that courts have routinely allowed an indicted defendant to obtain records of the proceedings which were relevant to a statutory motion to dismiss. The last two above cited cases, *People v. Backus,* and *Cummiskey v. Superior Court* (hereafter *Backus* and *Cummiskey*), are binding on us as Supreme Court authority and thus bear closer examination.

### Backus and Cummiskey

In *Backus, supra,* 23 Cal.3d 360 the trial court granted defendants' section 995 motions to dismiss their indictments on grounds, among others, that the indictments had been handed down in violation of due process. The due process violation asserted by defendants was that the extent of the

---

[8]Several years later, in *Hawkins v. Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], a newly formed majority of the court held that a defendant who is prosecuted by indictment is denied equal protection under the California Constitution unless he or she is provided a preliminary hearing and the concomitant rights which attach when prosecution is by information. *Hawkins* was in turn abrogated by a ballot initiative (Prop. 115, The Crime Victims Justice Reform Act, passed June 5, 1990) adding section 14.1 to article I of the Constitution. Section 14.1 now provides "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing."

inadmissible evidence presented by the district attorney, which was compounded by the district attorney's failure to advise the grand jury that some evidence was admissible for only a limited purpose, was so great that the indictment could not have been based on probable cause.

Addressing the due process claim, the Supreme Court noted that it had previously found it "unnecessary to decide[] that grand jury indictment procedures must comport with the demands of the due process clauses of both the federal and state Constitutions." (*Backus, supra,* 23 Cal.3d at p. 392; see also *Johnson, supra,* 15 Cal.3d 248; *Hawkins v. Superior Court, supra,* 22 Cal.3d 584.) The court in *Backus* again did not find it necessary to decide the broad issue of a defendant's right to due process in all grand jury proceedings. Instead, the court ruled more narrowly, reasoning from *Johnson,* that "[I]f the grand jury cannot fulfill its obligation to act independently and to protect citizens from unfounded obligations [*sic,* accusation?] [citation] when not advised of relevant exculpatory evidence, neither can it do so if it is invited to indict on the basis of incompetent and irrelevant evidence. It follows therefore that when the extent of incompetent and irrelevant evidence before the grand jury is such that, under the instructions and advice given by the prosecutor, it is unreasonable to expect that the grand jury could limit its consideration to the admissible, relevant evidence [citation], the defendants have been denied due process and the indictment must be dismissed notwithstanding Penal Code section 939.6." (*Backus, supra,* at p. 393.)[9]

Applying this rule to the case before it, the court in *Backus* concluded that the trial court had erred in granting defendants' section 995 motions. The court explained that no due process violations had occurred in the grand jury proceedings, since "[t]he nature and extent of the inadmissible evidence was not such that it may have compromised the independence of the grand jury and contributed to the decision to indict." (*Backus, supra,* 23 Cal.3d at p. 393) The record considered by the court in *Backus* included oral advisements given by the district attorney, a memorandum of law presented to the grand jury, and transcripts from a previous preliminary hearing.

In *Cummiskey,* the trial court denied the defendant's section 995 motion to set aside an indictment. The defendant claimed the grand jury proceedings were infected by error in several respects: 1) by not using the specific

---

[9]Section 939.6, subdivision (b), which was subsequently amended, but not substantively, provides: ". . . The grand jury shall not receive any evidence except that which would be admissible over objection at the trial of a criminal action, but the fact that evidence that would have been excluded at trial was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury."

language of section 939.8,[10] the court and the prosecutor had both instructed the grand jury regarding the wrong burden of proof; 2) the prosecutor had violated duties under 939.7 by refusing to answer the grand jurors' evidentiary questions and by telling them that they could "only consider the evidence we presented to you" (*Cummiskey, supra,* 3 Cal.4th at p. 1031); and 3) the prosecutor had erred in omitting instructions regarding lesser included offenses.

The Supreme Court rejected all of these arguments. In answer to the assertion in the dissent that a claim of instructional error was not cognizable under section 995, the court noted in a footnote that the defendant's claim in this case was "manifestly tantamount to a claim that, as instructed, the jury may have indicted her on less than reasonable or probable cause. As such, the indictment was plainly subject to a motion to set it aside on that ground under section 995, subdivision (a)(1)(B)." (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.) As to the defendant's remaining claims, the court continued: "[these] claims are, in essence, grounded on the premise that the manner in which the prosecutor conducted the grand jury proceedings ran afoul of her due process rights under the relevant statutory and common law principles governing indictment by grand juries." (*Ibid.*) Consequently, these claims were also cognizable under section 995 and writ relief was available.

However, upon reaching the merits of the defendant's claims, the court in *Cummiskey* concluded that the defendant's section 995 motion had been properly denied, not only because the indictment was based upon "sufficient evidence establishing probable cause," but also because "[t]he prosecutor did not mislead the jury regarding its ability to consider exculpatory evidence, if any. [Also] [a]bsent a request from the jury for further instructions to assist it in returning an indictment, no additional instructions were required." (*Cummiskey, supra,* 3 Cal.4th at p. 1037). Examining the record of the grand jury proceedings, the court reviewed a transcript of the court's instruction to the grand jury on the standard of proof, which was repeated several weeks later in the proceedings by the prosecutor. (*Id.* at p. 1025.) It also examined, and quoted in full, an exchange between one of the grand jurors and the prosecutor regarding various evidentiary questions posed by the grand jury. (*Id.* at pp. 1031-1032.) Finally, the court had a sufficient record from which it could conclude that the prosecutor did not instruct the grand jury on lesser included offenses and further that the grand jury did not ask the district attorney whether it could return an indictment for a lesser offense. (*Id.* at p. 1036.)

---

[10]Section 939.8 provides that "[t]he grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury."

While it is apparent from reading *Backus* and *Cummiskey* that the courts reviewing the defendants' motions to dismiss the indictment were able to consider substantial nontestimonial portions of the grand jury proceedings, the decisions in both cases are silent as to the manner in which this record came to be reported, transcribed, and produced to the defendant. No issue was raised in either case as to the propriety or necessity of the disclosure and neither case squarely held that a defendant has a right to discovery of grand jury proceedings, apart from the testimony, or that such proceedings must be recorded.

Nonetheless we derive the following guidance from these Supreme Court decisions for purposes of the issue before us. *Backus* recognized that a defendant bringing a section 995 motion to dismiss an indictment may assert a lack of "reasonable or probable cause" under that statute on the basis that the extent of inadmissible evidence, or the prosecutor's failure to advise of limited admissibility, or both, was such that it compromised the grand jury's ability to act independently and impartially in reaching its determination. If the record of the proceedings shows that it is unreasonable to expect that the grand jury could have limited its consideration to the admissible and relevant evidence, defendant has been denied due process. A defendant seeking to make such a showing may rely in part on "the instructions and advice given by the prosecutor." (*Backus, supra,* 23 Cal.3d at p. 393.)

The majority in *Cummiskey* implicitly acknowledged the principles expressed in *Backus* without, however, expressly citing or even mentioning *Backus*.[11] In *Cummiskey* the court found that claims of instructional and other error regarding "the manner in which the prosecutor conducted the grand jury proceedings" are cognizable in a section 995 motion to dismiss the indictment to the extent that such asserted error may have affected the grand jury's ability to determine probable cause to indict. Such claims implicate defendant's "due process rights under the relevant statutory and common law principles governing indictment by grand juries." (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.)

In sum, California law provides that a defendant has a due process right not to be indicted in the absence of a determination of probable cause by a grand jury acting independently and impartially in its protective role. (*Greenberg, supra,* 19 Cal.2d 320; *Parks v. Superior Court, supra,* 38 Cal.2d at p. 611; Cal. Const., art. I, § 14; *Johnson, supra,* 15 Cal.3d at p. 253; *Backus, supra,* 23 Cal.3d at p. 393; *Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.) An indicted defendant is entitled to enforce this right through means of a challenge under section 995 to the probable cause determination underlying the indictment, based on the nature and extent of the evidence and the

---

[11]*Backus* was cited by Justice Kennard in her dissent in *Cummiskey, supra*, 3 Cal.4th at page 1039.

manner in which the proceedings were conducted by the district attorney. (*Backus, supra,* 23 Cal.3d at p. 393; *Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.) In reviewing the merits of such a challenge, courts have routinely considered relevant nontestimonial portions of the record of the grand jury proceedings.

With this background in mind we turn to the arguments in this case.

## III. ARGUMENT

■ The People argue that respondent court's orders constitute an abuse of discretion because the orders compel discovery of secret grand jury proceedings in excess of that expressly permitted by statute. The People rely on section 1054, subdivision (e), which limits discovery to that allowed by express statutory provision. They point out that sections 938 and 938.1, which provide for transcription and disclosure of testimony, are the only statutes which expressly authorize disclosure of grand jury proceedings. The People further rely on the cases of *Stern v. Superior Court, supra,* 78 Cal.App.2d 9, and *People v. Gordon* (1975) 47 Cal.App.3d 465 [120 Cal.Rptr. 840] and on recent Supreme Court authority reaffirming the rule of secrecy in grand jury proceedings. (*McClatchy, supra,* 44 Cal.3d 1162; *Daily Journal, supra,* 20 Cal.4th 1117.)

Defendants contend that section 1054, subdivision (e), does not apply because the requests for augmentation of the record here do not constitute "discovery" within the meaning of the discovery chapter (ch. 10 of tit. 6) of the Penal Code. Even if section 1054 applied here, they claim that their rights to discovery of grand jury proceedings derive from both state and federal constitutional guarantees of due process, which override a statutory enactment. They contend that the rule of grand jury secrecy, relied upon by the People, must give way to these more important due process interests in circumstances where an indictment has been returned and the indicted defendant seeks to bring a motion to dismiss under section 995.

Chapter 10 of title 6 of the Penal Code, entitled "Discovery," was added to the code by initiative as part of Proposition 115 in 1990. The general purposes of the discovery chapter, as set forth in section 1054, are to require informal reciprocal discovery between the parties in order to save court time, avoid undue delay for witnesses and victims and "promote the ascertainment of truth in trials . . . ." (§ 1054, subds. (a)-(e).) Defendants argue that the record of grand jury proceedings sought here does not fall within the discovery provisions of chapter 10 because a grand jury proceeding is part of the charging phase of a criminal prosecution rather than the factfinding or

trial phase. (See, e.g., *Cummiskey, supra,* 3 Cal.4th at p. 1026.) They point out that the statute specifically refers to *"pretrial* discovery." (§ 1054, subd. (a), italics added.) The materials requested here, defendants argue, are not sought in order to prepare for trial, but to challenge the indictment. Furthermore, there is no reciprocity between parties because defendants have nothing to disclose.

We reject an interpretation of the discovery statutes which would result in their piecemeal application. An indictment is the first step in the prosecution of a criminal case which may culminate in a trial. (*McClatchy, supra,* 44 Cal.3d at p. 1176.) Discovery of the record of grand jury proceedings is thus "pretrial discovery" which may be used to challenge the indictment and if unsuccessful to prepare for trial. (§ 1054, subd. (a).) Title 6 of the Penal Code, where the discovery chapter is found, is entitled "Pleadings and Proceedings Before Trial." One such proceeding before trial is the procedure to set aside an indictment, described in chapter 2, sections 995 through 999a. It follows that the discovery chapter was intended to apply to this proceeding as well as to other proceedings before trial. Furthermore, subdivision (e) of section 1054, the statute in question here, refers simply to discovery "in criminal cases," which we take to mean all phases of a criminal case. (See also § 1054.5, subd. (a) ["No order requiring discovery shall be made in criminal cases except as provided in this chapter."].) It would be inconsistent with the liberal purposes of the modern discovery statutes, the objective of which is to further "the quest for truth" (*In re Littlefield* (1993) 5 Cal.4th 122, 133 [19 Cal.Rptr.2d 248, 851 P.2d 42]), to interpret them narrowly to apply to one phase of the process of criminal prosecution and not another. (See, e.g., *People v. Superior Court (Mitchell)* (1993) 5 Cal.4th 1229, 1232-1237 [23 Cal.Rptr.2d 403, 859 P.2d 102] [discovery obligations of § 1054 apply to sentencing phase].) For all of these reasons we conclude that the requests for augmentation before us here constitute discovery within the meaning of section 1054.

Subdivision (e) of section 1054 provides that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions or as mandated by the Constitution of the United States." Our Supreme Court has stated that "[s]ection 1054, subdivision (e), precludes us from broadening the scope of discovery beyond that provided in the chapter or other express statutory provisions, or as mandated by the federal Constitution. Thus, if none of those authorities requires disclosure of a particular item of evidence, we are not at liberty to create a rule imposing such a duty." (*People v. Tillis* (1998) 18 Cal.4th 284, 294 [75 Cal.Rptr.2d 447, 956 P.2d 409] ["Defendant identifies no statute outside the discovery chapter having any bearing on this case, nor does he persuade us the federal Constitution

mandates disclosure" of the discovery sought.].) According to the People, discovery of nontestimonial grand jury proceedings such as that sought by defendants' motions in these cases is prohibited under section 1054, subdivision (e), because it is neither mandated by the Constitution of the United States nor authorized by any "express statutory provisions" in the Penal Code.

We agree with the first part of the People's argument. There is no federal constitutional mandate regarding pretrial discovery of the records of grand jury proceedings. (See, e.g., *Hill v. Superior Court* (1974) 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820]; *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 372 [285 Cal.Rptr. 231, 815 P.2d 304]; *U.S. v. Williams* (1992) 504 U.S. 36, 49 [112 S.Ct. 1735, 1743, 118 L.Ed.2d 352].) Federal authorities are most persuasive when the issue involves a state statute or rule which is based upon a federal enactment. (*People ex rel. Lungren v. Community Development Agency* (1997) 56 Cal.App.4th 868, 884 [65 Cal.Rptr.2d 786].) The issue before us arises from the California statutory scheme regulating criminal grand jury proceedings, which is not based upon any federal enactments. As the California Supreme Court has stated, "[a]lthough the grand jury was originally derived from the common law, the California Legislature has codified extensive rules defining it and governing its formation and proceedings, including provisions for implementing the long-established tradition of grand jury secrecy." (*Daily Journal, supra,* 20 Cal.4th at p. 1122.) The federal cases discussing grand jury procedure are based on the Federal Rules of Criminal Procedure, which are different from the California statutory scheme.[12] Accordingly, we resolve the issue at bar on the basis of California law and decline defendants' invitation to follow federal law and adopt the balancing test derived from *Douglas Oil Co. v. Petrol Stops Northwest* (1979) 441 U.S. 211 [99 S.Ct. 1667, 60 L.Ed.2d 156].

The question whether the discovery sought in these cases falls within the other exception stated in section 1054, subdivision (e), in that it is "discovery . . . provided by . . . other express statutory provisions," is at the heart of the issue before us. It is not disputed that sections 938 and 938.1 provide the only express authorization for transcribing and producing records of grand jury proceedings. The People contend that statutes governing grand jury proceedings must be strictly construed, consistent with the history of

---

[12]The federal rules provide that "all proceedings" before the grand jury, except voting and deliberation, be recorded, but that the notes or transcripts prepared therefrom "shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case." (Fed. Rules Crim.Proc., rule 6(e)(1), 18 U.S.C.) Disclosure may be made "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." (Fed. Rules Crim.Proc., rule 6(e)(3)(C)(ii), 18 U.S.C.)

grand jury secrecy and the Legislature's intent to closely regulate these proceedings. Such a strict interpretation of sections 938 and 938.1, they argue, leads to the conclusion that the trial court is without authority to compel disclosure of anything other than the record of the witness testimony specifically authorized under those sections.

 In interpreting these statutes we are aided by well-established rules of statutory construction, which require that we construe statutes "to effectuate their purpose and intent, reading statutory schemes as a whole and harmonizing their provisions." (*Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1189 [68 Cal.Rptr.2d 607]; see also *California School Employees Assn. v. Governing Board* (1998) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) We read the words of statutes with their commonsense meanings, and avoid interpretations "which defy common sense or which might lead to mischief or absurdity, including literal meanings which would lead to a result not intended by the Legislature." (*Board of Retirement v. Santa Barbara County Grand Jury, supra,* 58 Cal.App.4th at p. 1189; see also *People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Thus if a literal reading of one statutory provision regarding grand jury proceedings would render it inconsistent with other statutes, such an interpretation may be rejected in favor of one which is in harmony with other parts of the statutory scheme. (*Farnow v. Superior Court, supra,* 226 Cal.App.3d 481, 490.) For example, in *Farnow*, the court considered an amendment to section 939, which expressly provided that only certain parties could be present at *criminal* sessions of the grand jury, ostensibly implying that there were no limits as to who could be present at *civil* sessions. (*Farnow, supra,* 226 Cal.App.3d at p. 487.) The court concluded that the Legislature could not have intended this result, which would have rendered section 939 inconsistent with other statutes governing grand jury proceedings, and therefore rejected a literal reading of the amendment. (*Farnow, supra,* 226 Cal.App.3d at pp. 490-491.)

Applying these principles of statutory construction, we similarly reject a strict interpretation of sections 938 and 938.1 which would limit a court's authority to order disclosure of the record of grand jury proceedings to witness testimony alone. Such an interpretation would be inconsistent with a defendant's right to raise claims under sections 995, 939.71 and 939.6, on the basis that the district attorney failed to advise of exculpatory evidence or failed to advise as to the limited admissibility of evidence. It defies common sense to think that the Legislature intended to provide rights under these statutes but at the same time denied the indicted defendant any means to enforce those rights. Indeed the People acknowledge that section 939.71 includes an implied requirement that the portions of the proceedings directly

relevant to a claim under that section "be recorded, transcribed and provided to the defendants, so they may have an opportunity to make this statutory motion to dismiss the indictment if they have been *substantially prejudiced.*" The People concede a similar implied requirement in connection with section 939.6, "that the admonitions given to the grand jury by the district attorney about the limited purpose for which testimony or other evidence is being presented be recorded, transcribed and provided to defendants. Because, if the *record* does not contain sufficient legally admissible evidence to support a finding of 'probable cause' the indictment must be set aside [under Penal Code § 995(a)(1)(B)]." (Italics in original.)

Moreover, as the discussion in the preceding section has shown, the Supreme Court's opinions in *Backus* and *Cummiskey* acknowledge that an indicted defendant is entitled to bring a motion to dismiss the indictment under section 995 for lack of probable cause, not only on the basis of the testimony received but also based on the manner in which the district attorney has conducted the proceedings, including asserted error regarding advisements or instructions given or withheld. A defendant's ability to raise such claims and establish the requisite showing would be unduly restricted without access to the relevant nontestimonial portions of the record of the grand jury proceedings. In sum, we believe that sections 995, 939.71 and to a certain extent section 939.6 provide the requisite "express statutory provisions," within the meaning of section 1054, subdivision (e), authorizing discovery of nontestimonial grand jury proceedings.

In light of the development of an indicted defendant's rights to challenge the indictment and Supreme Court authority in *Johnson, Backus* and *Cummiskey,* the two early cases relied on by the People have limited vitality today. (*Stern v. Superior Court, supra,* 78 Cal.App.2d 9 (*Stern*); *People v. Gordon, supra,* 47 Cal.App.3d 465 (*Gordon*).) In *Stern* a defendant sought dismissal of his indictment on grounds that (1) unauthorized persons were present during grand jury proceedings; and (2) the grand jury transcript provided by the prosecutor was incomplete because it did not contain copies of exhibits introduced during the proceedings. The court in *Stern* discounted both arguments. First, the court determined that the persons present consisted of the district attorney and his assistants, and their presence was authorized by former section 925 (now § 934). The court noted that "the grand jury is entitled to the legal advice of the district attorney (Pen. Code, § 925) and the law does not require the presence of a reporter while such advice is being given, the only requirement being that 'the testimony that may be given' be reported. (Pen. Code, § 925 [now §§ 938, 938.1].)" (*Stern, supra,* at p. 13.) As to the exhibits, the court again found that under former Penal Code section 925 (now §§ 938, 938.1) "the reporter . . . is required

only to report the testimony given." (*Stern, supra,* at p. 13.) The court observed that "[e]xhibits are not testimony," and thus were not required to be included in the reporter's transcripts. (*Ibid.*) However, the court noted that such exhibits "may be made available to the defendants" and had in fact been made available in the case before it. (*Id.* at p. 14.)

The holding of *Stern* is a narrow one: Exhibits and advice given by the district attorney are not strictly part of the "testimony" before the grand jury and thus are not required to be reported under sections 938 and 938.1 (former § 925). As noted in the previous section, the Supreme Court in *Johnson* later found that section 939.7 provided a separate statutory basis for allowing defendant to obtain nontestimonial portions of the proceedings in order to determine whether the prosecutor had advised the grand jury regarding exculpatory evidence. And cases decided thereafter indicate that nontestimonial portions of the proceedings were routinely provided to defendants mounting a challenge to the indictment, even though no statute specifically required transcription. (See, e.g., *People v. Snow, supra,* 72 Cal.App.3d 950, 958 [record of hearing reveals district attorney advised grand jury of possible exculpatory evidence]; *People v. Laney, supra,* 115 Cal.App.3d 508, 512-513 [record included district attorney's admonitions and dialogue before the grand jury with witnesses who did not testify]; *People v. Coleman, supra,* 84 Cal.App.3d 1016, 1019 [transcript contained district attorney's comments and answers to grand juror's questions at conclusion of testimonial evidence]; *Backus, supra,* 23 Cal.3d 360, 393 [grand jury advised of certain evidence admissible for a limited purpose]; *Cummiskey, supra,* 3 Cal.4th 1018, 1031-1032 [transcript of question and answer exchange between grand jurors and district attorney quoted]; See also *People v. Jones* (1990) 51 Cal.3d 294, 318 [270 Cal.Rptr. 611, 792 P.2d 643], acknowledging that "[i]n cases prosecuted by indictment, every indicted defendant is entitled to a *complete transcript* of the proceedings . . . .") (Italics added.)

In *Backus,* the court found that a defendant's right to challenge an indictment for lack of probable cause under section 995 could include a claim that the state of the evidence, "under the *instructions and advice given by the prosecutor,*" compromised the grand jury's ability to reach a determination independently and impartially. (*Backus, supra,* 23 Cal.3d at p. 393, italics added.) Similarly in *Cummiskey,* the court found that a defendant had a cognizable claim under section 995 if he or she could show prejudicial error in "the manner in which the prosecutor conducted the grand jury proceedings." (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.) Thus even though, as the *Stern* court held, sections 938 and 938.1 require only transcription of testimony, that does not prohibit discovery of other portions of the record permitted under other statutes and subsequent law.

*Gordon, supra,* 47 Cal.App.3d 465 is relied on by the People for the rule that "[a]n indictment cannot be attacked . . . under Penal Code section 995 . . . on the grounds that the grand jury was given insufficient or even inaccurate legal advice before returning an indictment." (*Gordon, supra,* at p. 476.) The People note that *Gordon* was cited with approval by the Supreme Court in *Cummiskey.* The court in *Cummiskey* cited *Gordon* with approval regarding a different proposition, however, namely that the district attorney has no duty to instruct the grand jury in the same manner as a trial judge instructs at trial. (*Cummiskey, supra,* 3 Cal.4th at p. 1034.) For example, there is no duty to instruct sua sponte on lesser included offenses. The language quoted above from *Gordon* reflected the view that a claim of improper instruction of the grand jury does not fall under either the "reasonable or probable cause" subdivision of section 995 (§ 995, subd. (a)(1)(B)) or under the subdivision (a)(1)(A) requirement, that the indictment is not "found, endorsed, and presented as prescribed in this code." The view expressed in *Gordon* was adopted by Justice Kennard in her concurring and dissenting opinion in *Cummiskey.* However, it was specifically rejected by the majority, which found that the defendant's claimed instructional error was "manifestly tantamount to a claim that, as instructed, the jury may have indicted her on less than reasonable or probable cause. As such, the indictment was plainly subject to a motion to set it aside on that ground under section 995, subdivision (a)(1)(B)." (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1; see also *id.* at p. 1040 (conc. & dis. opn. of Kennard, J.).) Thus *Gordon* is no longer sound precedent for the rule that instructional error may not be raised in a section 995 motion to dismiss an indictment on the basis of lack of probable cause.

The People rely extensively on the more recent Supreme Court decisions in *McClatchy, supra,* 44 Cal.3d 1162, and *Daily Journal, supra,* 20 Cal.4th 1117 for the proposition that "grand jury secrecy is the rule and openness the exception, permitted only when specifically authorized by statute." (*McClatchy, supra,* at p. 1180.) Thus, they argue, the trial court is without authority to disclose grand jury materials other than as expressly permitted by statute. We do not believe that *McClatchy* and *Daily Journal* determine the outcome in the cases before us since both of those cases involved the disclosure of evidentiary portions of the record to the public when there had been no indictment. Neither case bears directly on the question whether or to what extent an indicted defendant may discover nontestimonial portions of the record for purposes of a motion under section 995.

In *McClatchy,* the issue was whether the superior court had properly prevented a civil grand jury's attempt to publicly disclose raw evidentiary materials, including witness testimony transcripts and documentary exhibits,

as part of its final report following a secret watchdog investigation.[13] No indictments had been weighed or returned by the grand jury in the underlying cases in *McClatchy*. The Supreme Court upheld the superior court's order preventing disclosure of the evidentiary materials. (*McClatchy, supra,* 44 Cal.3d at p. 1167.)

The court explained that its ruling was based upon the traditional principles of grand jury secrecy as codified by the Legislature in various provisions of the Penal Code. (*McClatchy, supra,* 44 Cal.3d at pp. 1173-1175, 1178-1179) "Recognizing the important purposes served by grand jury secrecy, the Legislature has enumerated only three situations in which disclosure of raw evidentiary material is permitted. First, by court order the testimony of a witness may be disclosed to determine whether it is consistent with testimony given before the court or when relevant to a charge of perjury. (§ 924.2; [citation].) Secondly, section 938.1, subdivision (b), provides that when an indictment is returned, transcripts of testimony taken before the grand jury are to be delivered to the defendant and thereafter filed for public access. . . . [Citations.] [¶] And finally, evidentiary materials gathered by one grand jury may be disclosed to a succeeding grand jury." (*McClatchy, supra,* 44 Cal.3d at p. 1178, fn. omitted; § 924.4.)

The court found that "[t]here is no explicit statutory authority for the grand jury to disclose to the public raw evidentiary materials as part of its final report in a watchdog investigation." (*McClatchy, supra,* 44 Cal.3d at p. 1178, italics omitted.)[14] The code requires that the report contain only the "findings and recommendations" of the grand jury. (§ 933, subd. (a).) The grand jury can hold a public session, but only after obtaining the approval of the superior court. (§ 939.1.) And the only disclosure of evidence permitted by statute is where an investigative grand jury passes on information to another grand jury. (§ 924.4.) The court in *McClatchy* concluded therefore that the grand jury had exceeded its authority by attempting on its own initiative to make public the evidentiary materials gathered in the course of its investigation. (*McClatchy, supra,* at p. 1179.) Thus the superior court did not err in ordering that those materials remain secret.

The court in *McClatchy* emphasized that the watchdog function and the indictment function of a grand jury served different social purposes. Public

---

[13]The investigation in *McClatchy* was conducted pursuant to sections 919 and 925, which empower the grand jury to investigate and report on the affairs of local government, including misconduct in public office.

[14]In 1998 the Legislature enacted Penal Code section 929 which provides for the release to the public of "part or all of the evidentiary material" presented to a civil grand jury, subject to court approval, provided the names of the persons providing the information are not released.

disclosure of evidentiary materials in a grand jury report following a secret "watchdog" investigation could cause harm to persons adversely commented upon, without any adequate forum for response. In contrast, when an individual is indicted, he or she is entitled to a public trial to test the evidence and confront the witnesses. (*McClatchy, supra*, 44 Cal.3d at pp. 1176-1177.) The court's comments in *McClatchy* regarding the continuing need to maintain the secrecy of evidentiary and other materials after the grand jury is discharged are thus limited to the circumstances before it.

*Daily Journal* involved the release of testimony and documentary evidence to the media following a grand jury investigation which had concluded in a settlement without any indictments being returned. In *Daily Journal*, the grand jury had conducted a criminal investigation of an investment banking firm which had sold high-risk securities to Orange County, precipitating that county's bankruptcy filing. Various media entities requested release of all the testimony and other documents presented to the grand jury in the course of its investigation, and the superior court ordered the materials disclosed. The Court of Appeal affirmed the trial court, determining that the superior court has inherent power to exercise its discretion to release otherwise secret grand jury materials in the absence of a statutory provision limiting its authority. The Supreme Court disagreed.

The court found there was no statute authorizing the public release of evidentiary material in criminal grand jury investigations *where no indictment has been returned*. Absent express legislative authorization, the superior court may not require such disclosure. The court stated: "As in *McClatchy*, we remain persuaded of the continued importance of maintaining the heritage of grand jury secrecy when there has not been an indictment, in order to preserve the effectiveness of the grand jury process, as well as to protect witnesses against the adverse consequences, including damage to reputation, of disclosing their testimony." (*Daily Journal, supra*, 20 Cal.4th at p. 1132.)

However, the court acknowledged that "[t]he same [secrecy] considerations do not, by contrast, adhere when there has been an indictment, because it is but ' "the first step in a long process in which the accused may seek vindication through exercise of the right to public trial, to a jury, to counsel, to confrontation of witnesses against him and, if convicted to an appeal." ' " (*Daily Journal, supra*, 20 Cal.4th at p. 1127, quoting *McClatchy, supra*, 44 Cal.3d at p. 1176). The court noted that "[i]f an indictment is returned, Penal Code section 938.1 requires that a transcript of the grand jury proceedings be prepared and delivered to the district attorney and the defendant" and thereafter to the public. (*Daily Journal, supra*, 20 Cal.4th at

p. 1123.) Thus although grand jury proceedings are not open to the public, once an indictment has been returned, " 'section 938.1 . . . implicitly recognizes the public's qualified right of access to the record of those proceedings.' " (*Daily Journal, supra,* 20 Cal.4th at p. 1132, quoting *Press-Enterprise Co. v. Superior Court* (1994) 22 Cal.App.4th 498, 505, fn. 5 [27 Cal.Rptr.2d 708].)

We turn now to the parties' due process arguments. Defendants claim that the dictates of due process require fairness in all grand jury proceedings, since those proceedings may ultimately lead to a deprivation of a defendant's life or liberty. Defendants contend they cannot enforce these due process rights if the record of the proceedings, other than those portions which the district attorney has produced in these cases, is kept secret after the indictment has been handed down. The People appear to agree that an indicted defendant is entitled to *some* record of nontestimonial proceedings, including a record of the district attorney's advisements regarding exculpatory evidence and admonishments concerning evidence admissible for a limited purpose, in accordance with sections 939.71 and 939.6, respectively. In addition, as noted in the case summaries, the People have voluntarily provided a record of the superior court's charge to the grand jury. The People contend that these disclosures permit an indicted defendant to meaningfully assert his or her statutory rights and are sufficient to satisfy due process. They point out that "the Legislature did not intend to equate a grand jury proceeding with a trial" and that the full panoply of due process rights does not attach during grand jury proceedings. (*Cummiskey, supra,* 3 Cal.4th at p. 1026.)

We agree in part, and disagree in part, with both sides. Defendants rely primarily on federal cases to bolster their due process arguments. As we have noted, the functioning of the grand jury is regulated by state statute, as interpreted by our state Supreme Court. Federal law is not controlling. No California Supreme Court case has squarely held that grand jury indictment procedures must comport with the demands of due process. In *Johnson,* the court declined to rule on the petitioner's due process claims, instead basing its decision on its interpretation of section 939.7. In *Backus,* the court observed that it had previously found it unnecessary to decide the broad due process issues, but again the court took a more limited approach. The court emphasized the grand jury's role as a "protective bulwark" between a citizen and an overzealous prosecutor, which demanded that it act independently of the prosecutor or judge. Thus a defendant was denied due process if the extent of the evidence, under the instruction and advice given by the prosecutor, revealed that the grand jury was unable to fulfill its duty "to act independently and to protect citizens from unfounded obligations [*sic,* accusations?] [citation] . . . ." (*Backus, supra,* 23 Cal.3d at p. 393.) In

*Cummiskey* the court acknowledged that an indicted defendant could bring a motion to set aside an indictment under section 995 if "the manner in which the prosecutor conducted the grand jury proceedings ran afoul of her due process rights *under the relevant statutory and common law principles governing indictment by grand juries.*" (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn 1, italics added.) Thus although no Supreme Court case expressly holds that grand jury indictment procedures must comport with due process, *Backus* and *Cummiskey* recognize that due process may be violated if the grand jury proceedings are conducted in such a way as to compromise the grand jury's ability to act independently and impartially in reaching its determination to indict based on probable cause. And the indicted defendant may raise such a claim in a motion to dismiss under section 995.

If an indicted defendant is unable to make a showing to support such a claim in a section 995 motion because the nontestimonial portion of the record of the proceedings is kept secret, defendant's rights under the relevant statutes and the authority of *Backus* and *Cummiskey* are prejudiced. We cannot accept the People's argument that disclosure of some nontestimonial portions of the record of the proceedings but not other portions is sufficient to satisfy the due process concerns expressed by the Supreme Court. In our view all communications between the district attorney's office and the grand jury and the superior court and the grand jury could arguably have some bearing on the question whether "the manner in which the prosecutor conducted the grand jury proceedings ran afoul of . . . due process rights . . . ." (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.)

In *Backus* and *Cummiskey* it is apparent that the court reviewing the indicted defendant's motion to dismiss had before it a record of nontestimonial as well as testimonial portions of the grand jury proceedings, including oral advisements given by the district attorney, a written advisement presented by the district attorney in the form of a memorandum of law, instructions on the law given to the grand jury by both the district attorney and the court, questions and answers in an exchange between the grand jury and the district attorney about the evidence, and transcripts from a previous preliminary hearing. These nontestimonial portions of the record were disclosed and were reviewed by the court without comment. We can only conclude that the disclosure of the nontestimonial portion of the records in *Backus* and *Cummiskey* was implicitly approved by the Supreme Court. Were we to find that respondent court in the cases before us abused its discretion by ordering disclosure of the same and similar nontestimonial portions of the record as were allowed in *Backus* and *Cummiskey,* such a holding would be out of step with policy and procedure implicitly approved by our high court. (See, e.g., *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450,

455 [20 Cal.Rptr. 321, 369 P.2d 937].) As noted, the discretion we review is " 'a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*In re Robert L., supra,* 21 Cal.App.4th at p. 1066, quoting *Bailey v. Taaffe, supra,* 29 Cal. at p. 424.) We therefore find, as summarized below, that respondent court did not abuse its discretion in ordering discovery of nontestimonial portions of the record which would assist the defendant in bringing a motion under section 995 to dismiss the indictment.

We agree with the People, however, that an indicted defendant is not entitled to discover portions of the record which may indicate who was present during grand jury proceedings, reveal the identifying information of the grand jurors, or show the record of the dates and lengths of the grand jury's deliberation sessions. The duration of the grand jury's deliberation is irrelevant to any challenge to the validity of the indictment so long as the indictment is "found, endorsed, and presented" as prescribed in the Penal Code. (§§ 995, subd. (a)(1)(A), 940.) Furthermore, although there could arguably be a basis under section 995, subdivision (a)(1)(A), for discovery as to whether the required number of grand jurors who voted for indictment heard all of the evidence (*People v. Fujita* (1974) 43 Cal.App.3d 454, 477 [117 Cal.Rptr. 757]; § 940), there is no compelling reason for disclosing the personal identities of the grand jurors. Similarly, there is no compelling reason for disclosing a list of all persons present throughout the proceedings. While section 939 provides that only authorized persons are to be present during grand jury proceedings, the presence of unauthorized persons is no longer an express ground for a section 995 motion.[15] Defendants have failed to advance any argument as to why disclosure of the requested information is necessary to protect their right to bring a section 995 motion to set aside the indictment, and we find no authority which permits such disclosure.

## IV. CONCLUSIONS

 Discovery of nontestimonial portions of the record of grand jury proceedings is not barred by section 1054, subdivision (e). That section allows for discovery authorized by "other express statutory provisions." Sections 995, 939.7 and, to a certain extent, section 939.6 provide authority for such discovery by an indicted defendant. Our Supreme Court in *Backus* and *Cummiskey* implicitly approved of discovery of nontestimonial portions of the record to the extent necessary for an indicted defendant to assert a due

---

[15]The presence of unauthorized persons was an express ground for a section 995 motion until 1927, when the Legislature amended section 995 to eliminate that ground. (Stats. 1927, ch. 854, § 1, p. 1756.) (But see *People v. Rojas* (1969) 2 Cal.App.3d 767 [82 Cal.Rptr. 862].)

process right not to be indicted in the absence of reasonable or probable cause. A trial court does not abuse its discretion in compelling disclosure of nontestimonial portions of grand jury proceedings to assist defendant in preparing a statutory motion to dismiss the indictment, including advice, instruction, argument and other communications between the district attorney and the grand jury such as questions and answers, read-backs of testimony, as well as questions and answers between the court and jury. Such disclosure does not violate the rule of secrecy of grand jury proceedings since the purposes behind the secrecy requirement are no longer present after the deliberations are complete and an indictment has been returned. Disclosure is not permitted, however, of information which has no bearing on defendant's statutory and due process rights to bring a motion to dismiss the indictment, including information regarding the identities of the grand jurors and other persons present, or the dates or lengths of the sessions.

Having reached our conclusions for the reasons stated above, we need not address defendants' argument that the equal protection clause of the United States Constitution requires disclosure of grand jury proceedings to defendants indicted in Santa Clara County to the same extent provided to defendants indicted in other counties,[16] or that defendants are deprived of their Sixth Amendment right to effective assistance of counsel unless they can obtain the augmented record.

Nor do we reach any issues which may arise if, as the People have represented, no grand jury proceedings were reported in these cases other than the witness testimony, the district attorney's presentation of exculpatory evidence, the district attorney's admonishments regarding evidence admissible for a limited purpose, and the superior court's charge to the grand jury at impanelment. The question whether other portions of the proceedings must be recorded is not before us. Further, we express no opinion as to the appropriateness or outcome of any section 995 motions which defendants may file as a result of this decision.

## V. DISPOSITIONS

Our holdings and the disposition in each case are as follows:

---

[16]Counsel for defendant Mouchaourab advises that, according to the declarations of local defense counsel, it is presently common practice in the counties of Alameda, Contra Costa, Los Angeles, Marin, Riverside, San Diego, San Francisco, San Joaquin, San Mateo, and Stanislaus to provide criminal defendants with access to a record of the advice and instructions given to the grand jury by the district attorney and the court, as well as comments or questions by the grand jurors, the district attorney's opening and closing statements, and in some cases the announcement of grand jurors present throughout the proceedings.

*People v. Superior Court (Mouchaourab) (H019369)*

As to the 12 requests for augmentation of the record contained in defendant's motion, the People did not object to compliance with requests number (1), transcripts of the charge and instruction by the court to the grand jury, number (11), the system used for drawing juror names and to compose the grand jury, and number (12), a list, record or transcript of the process by which prospective grand jurors were chosen. In regard to numbers (11) and (12), the People provided a transcript of the impanelment proceedings with the names of the grand jurors redacted.

*Trial Court's Order:*

As to request numbers (2) through (10), respondent court granted or denied defendant's motion for augmentation of the grand jury transcript as follows: (2) transcripts of any advice given or instruction in law given by the court or the district attorney, granted; (3) transcripts of the roll call or a list of names of the grand jurors present for each day of testimony, instruction, deliberation and return of a true bill, granted as to how many grand jurors were present, but names ordered redacted; (4) a list of all persons present during each day of grand jury proceedings, granted; (5) a record of when and for how long each session of grand jury deliberations occurred, granted as to "the record on the days the grand jurors met"; (6) a transcript of the district attorney's opening and closing remarks and argument, granted; (7) a record of all questions by jurors to the district attorney, granted; (8) a record of all questions to the court by the grand jurors and the answers given by the court, granted; (9) the jury list from which the grand jurors were chosen, denied without prejudice; (10) a list of names, street addresses and zip codes of grand jurors, denied without prejudice.

*Holding:*

For the reasons we have stated above, we hold that that respondent court abused its discretion by ordering the People to comply with request number (4), for a list of all persons present during each day of grand jury proceedings; and (5), for a record of the dates and lengths of sessions on the days the grand jury met.

*Disposition:*

Let a peremptory writ of mandate issue vacating that portion of respondent court's order which grants defendant's motion to augment the grand jury transcript by directing the People to produce a list of all persons present

during each day of grand jury proceedings and a record of the dates and lengths of sessions on the days the grand jury met. In all other respects, the petition for writ of mandate is denied. The temporary stay order is vacated.

*People v. Superior Court (Gracia) (H020156)*

*Trial Court's Order:*

Respondent court granted defendant's motion for augmentation of the grand jury transcript in part by compelling the People to comply with the following discovery requests in their entirety: (1) transcripts of the charge and instruction by the court to the grand jury at the time of indictment; (2) transcripts of any advice given or instruction in law given by the court or the district attorney; (3) transcripts of the roll calls or a list of names of the grand jurors present for each day of testimony, instruction, deliberation and return of a true bill; (4) a list of all persons present during each day of grand jury proceedings; (5) a record of when and for how long each session of grand jury deliberations occurred; (6) a transcript of district attorney's opening and closing remarks and argument; (7) a record of all questions by jurors to the district attorney; and (8) a record of all questions to the court by the jurors and the answers given by the court. The People did not object to compliance with request number (1), the transcripts of the charge and instruction by the court to the grand jury.

The court denied defendant's motion in part by denying discovery of the following items: (9) the jury list from which the jurors were chosen; (10) a list of names, street addresses and zip codes of grand jurors; (11) the actual system used for drawing juror names and to compose the grand jury; and (12) a list, record or transcript of the process by which prospective grand jurors were accepted, along with findings of qualifications and excusals granted.

*Holding:*

For the reasons stated above, we hold that respondent court abused its discretion in ordering the People to comply with request number (3), for a transcript of the roll calls or a list of names of the grand jurors present each day during the proceedings; request number (4), for a list of all persons present during each day of grand jury proceedings, and request number (5), for a record of when and for how long each session of grand jury deliberations occurred.

*Disposition:*

Let a peremptory writ of mandate issue vacating that portion of respondent court's order which grants defendant's motion to augment the grand

jury transcript by directing the People to produce transcripts of roll calls or a list of names of the grand jurors present each day of the proceedings, a list of all persons present during each day of grand jury proceedings and a record of when and for how long each session of grand jury deliberations occurred. In all other respects, the petition for writ of mandate is denied. The temporary stay order is vacated.

*People v. Superior Court (Avant! Corp.) (H019849)*

*Trial Court's Order:*

The trial court granted the Avant defendants' motion for augmentation in its entirety by ordering the People to produce the following records: "1. Transcripts of any advice or instruction in the law pertaining specifically to this case given to the grand jury by any representative of the district attorney's office; [¶] 2. Transcripts of all requests for additional evidence, testimony, and any questions asked by grand jurors which were submitted to any representative of the district attorney's office during testimony, instructions, or deliberations; [¶] 3. Transcripts of all responses or read-backs made by any court reporter, witness or any representative of the district attorney's office in response to any question or request submitted by the grand jurors; [¶] 4. Transcripts of all opening remarks and all arguments or comments made to or in the presence of the grand jury by any representative of the district attorney's office." The court also directed the court reporter to transcribe all notes of the grand jury proceedings not already transcribed.

*Holding:*

For the reasons stated above, we hold that respondent court did not abuse its discretion in any aspect of its order.

*Disposition:*

The petition for writ of mandate is denied. The temporary stay order is vacated.

*People v. Superior Court (Baez) (H019706)*

*Trial Court's Order:*

Respondent court granted in part defendant's motion to augment the grand jury transcript by ordering the People to disclose the transcript of advice or instruction in the law given to the grand jury by the district attorney's office.

*Holding:*

For the reasons stated above, we hold that respondent court did not abuse its discretion in making this order.

*Disposition:*

The petition for writ of mandate is denied. The temporary stay order is vacated.

*People v. Superior Court (Bautista) (H020073)*

*Trial Court's Order:*

The trial court granted defendant's motion for augmentation of the grand jury transcript by compelling the district attorney to provide defendant "with a transcript of the charge given to the grand jury, with a transcript of all interactions between the prosecution and the grand jurors, with a transcript of all comments and statements made to the grand jury by the prosecution, and with a copy of the instructions given to the grand jury."

*Holding:*

For the reasons stated above, we hold that respondent court did not abuse its discretion in granting the motion as ordered.

*Disposition:*

The petition for writ of mandate is denied. The temporary stay order is vacated.

Wunderlich, J., concurred.

**MIHARA, J.,** Concurring.—While I am in substantial agreement with my colleagues' well-written majority opinion in most respects, I write separately to express my belief that defendants' rights to discovery of transcripts of the nontestimonial portions of the grand jury proceedings arise from the California Constitution's guarantee of due process.

Defendants assert that "due process" requires that grand jury proceedings be fair, and the People do not challenge this assertion. Defendants reason from this premise that their due process rights to fair grand jury proceedings cannot be vindicated if they are precluded from discovering the nature of those proceedings. The People respond that a transcript of only the testimonial portions of the proceedings is sufficient to satisfy due process. My

colleagues conclude that defendants are entitled to discover transcripts of the nontestimonial portions of the grand jury proceedings. However, my colleagues avoid premising this discovery right on the California Constitution. This is the point at which my view diverges from that of my colleagues.

My colleagues state that "[n]o California Supreme Court case has squarely held that grand jury indictment procedures must comport with the demands of due process" and later repeat the claim that "no Supreme Court case expressly holds that grand jury indictment procedures must comport with due process." (Maj. opn., *ante*, at pp. 434, 435.) I disagree with the substance of these remarks. I understand *People v. Backus* (1979) 23 Cal.3d 360 [152 Cal.Rptr. 710, 590 P.2d 837] to *hold* that grand jury indictment procedures *are* subject to the California Constitution's guarantee of due process and therefore "must comport with the demands of due process."

I will not quibble about whether *Backus*'s holding should be characterized as "square" or "express." Suffice it to say that I do not find *Backus* vague with regard to its due process holding. The defendants in *Backus* moved to dismiss the indictment on the ground that their *due process rights* had been violated because inadmissible evidence had been presented to the grand jury. (*People v. Backus, supra*, 23 Cal.3d at pp. 391-392.) Noting that "[n]either this court nor the United States Supreme Court has *yet* addressed the question of a defendant's right to due process during grand jury proceedings," the California Supreme Court nevertheless concluded that "due process" *did* generally apply to grand jury proceedings. (*Backus*, at pp. 392-393, italics added.) "If the grand jury cannot fulfill its obligation to act independently and to protect citizens from unfounded obligations . . . when not advised of relevant exculpatory evidence [(*Johnson v. Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792])], neither can it do so if it is invited to indict on the basis of incompetent and irrelevant evidence. It follows therefore that when the extent of incompetent and irrelevant evidence before the grand jury is such that, under the instructions and advice given by the prosecutor, it is unreasonable to expect that the grand jury could limit its consideration to the admissible, relevant evidence . . . , *the defendants have been denied due process* and the indictment must be dismissed notwithstanding Penal Code section 939.6."[1] (*Backus*, at p. 393, citations omitted, italics added.)

Although the California Supreme Court did not *expressly* indicate in *Backus* the *source* of the "due process" right it recognized, its reliance on California case authority reflected that this due process right arose from the

---

[1]The court in *Backus* ruled that the defendants "were not prejudiced" by the inadmissible evidence presented to the grand jury. (*People v. Backus, supra*, 23 Cal.3d at p. 393.)

California Constitution rather than the United States Constitution.[2] (*People v. Backus, supra,* 23 Cal.3d at pp. 392-393.) My colleagues emphasize in their opinion that the California Supreme Court in *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018 [13 Cal.Rptr.2d 551, 839 P.2d 1059] character-ized the defendant's due process claim as an assertion that the grand jury proceedings had violated " 'her due process rights *under the relevant statu-tory and common law principles governing indictment by grand juries.*' " (Maj. opn., *ante,* at p. 435, original italics.) They seem to suggest by this emphasis that the California Supreme Court was disclaiming a *constitutional origin* for the procedural due process right which applies to grand jury proceedings. If this is what they mean to suggest, I beg to differ.

While the *constitutional* concept of procedural due process *includes* pro-cedures which were recognized by the common law and by statute prior to the adoption of the Constitution *and* procedures which are necessitated by other constitutional provisions (see *Murray's Lessee et al. v. Hoboken Land and Improvement Co.* (1855) 59 U.S. (18 How.) 272, 276-277 [15 L.Ed. 372]), there is no such thing as "*non*constitutional due process," although statutes obviously may authorize *procedures* which are not constitutionally required. As the California Supreme Court did not indicate in *Backus* or *Cummiskey* that its references to "due process" were a euphemism for some unspecified statutorily prescribed procedure without any constitutional basis, I cannot accept the apparent inference drawn by my colleagues that *Backus* and *Cummiskey* somehow recognized a *non*constitutional due process right.

I am convinced that the holding in *Backus* determines the result in the case before us. Since, as *Backus* held, the right to due process permits a defendant to challenge an indictment on the ground that the grand jury proceeding was unfair because inadmissible evidence was presented to the grand jury, it follows that this same due process right also permits a defendant to chal-lenge an indictment on the ground that the grand jury proceeding was unfair because the court or the prosecutor made prejudicial or erroneous statements to the grand jury. It is self-evident that a defendant cannot determine whether a grand jury proceeding was unfair in this respect unless he or she can discover a transcript of the nontestimonial portions of the grand jury proceedings.

I would therefore conclude that defendants have a California constitu-tional due process right to challenge indictments on the ground that the

---

[2]The California Constitution's due process guarantee is not merely coextensive with the United States Constitution's due process guarantee. (*People v. Ramos* (1984) 37 Cal.3d 136, 152 [207 Cal.Rptr. 800, 689 P.2d 430]; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 355 [276 Cal.Rptr. 326, 801 P.2d 1077].)

grand jury was exposed to prejudicial or erroneous statements by the court or the prosecutor. As this California constitutional right cannot be vindicated without permitting defendants to obtain transcripts of the nontestimonial portions of the grand jury proceedings, the California Constitution entitles defendants to discovery of such transcripts. Although Penal Code section 1054, subdivision (e) precludes discovery except where expressly required by statute or mandated by the *United States* Constitution, Penal Code section 1054, subdivision (e), as a mere statute, has no power to preclude discovery where it is required to vindicate rights guaranteed by the California Constitution.[3] (See *County of Los Angeles v. Payne* (1937) 8 Cal.2d 563, 574 [66 P.2d 658] ["the Constitution of the state is supreme, and any statute in conflict therewith is of no validity"].)

Consequently, I am convinced that the trial courts' discovery orders were justified by the California Constitution's due process guarantee and concur in my colleagues' dispositions in these matters.

---

[3]In fact, Proposition 115, by which Penal Code section 1054, subdivision (e) was enacted, included a constitutional amendment which would have deprived "California courts in criminal cases . . . [of the] authority to interpret the state Constitution in a manner more protective of defendants' rights than extended by the federal Constitution, as construed by the United States Supreme Court." (*Raven v. Deukmejian, supra*, 52 Cal.3d 336, 352.) This purported constitutional amendment was invalidated by the California Supreme Court as an improper attempt at constitutional "revision," and the provision did not take effect. (*Raven*, at p. 355.)